**DYKEMA GOSSETT**
Daniel J. Stephenson, (SBN 270722)
dstephenson@dykema.com
333 S. Grand Avenue
Suite 2100
Los Angeles, CA 90071
Telephone: (213) 457-1780
Facsimile: (213) 457-1850

Attorneys for Defendant
THE PROCTER & GAMBLE COMPANY

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN EDMUNDSON, On Behalf of Himself, All Others Similarly Situated and the General Public | Case No. 3:10-cv-02256– H-NLS |
| | [Assigned for all purposes to the Honorable Marilyn L. Huff] |
| Plaintiff, | **DEFENDANT THE PROCTER & GAMBLE COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS;** |
| vs. | Filed Concurrently With |
| | **1.** Request for Judicial Notice<br>2. [Proposed] Order For Judicial Notice<br>3.. Declaration of Daniel J. Stephenson in Support of Motion to Dismiss<br>4. [Proposed] Order Dismissing Complaint |
| THE PROCTER & GAMBLE COMPANY, | |
| Defendant. | Date:       February 14, 2011<br>Time:       10:30 a.m.<br>Courtroom: 13, Fifth Floor |

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES..................................................................................... ii

I.     INTRODUCTION............................................................................................1

II.    THE ALLEGATIONS AND CLAIMS IN PLAINTIFF'S COMPLAINT..............................2

       A.     The Fusion razor systems. .................................................................2

       B.     The patented difference between the two replacement cartridges...................3

       C.     Plaintiff's claims................................................................................3

III.   ARGUMENT ..................................................................................................4

       A.     The Court should dismiss the CLRA claim because there are no alleged false
              statements and Plaintiff does not contend that the product fails to do what it
              claims to do. ...................................................................................5

              1.     There are no alleged express misrepresentations at issue in this
                     lawsuit. ...................................................................................6

                     a.     The word "Power" in the name "Fusion Power" cartridges is
                            not a misrepresentation.................................................8

                     b.     The coloring on the packaging is not a misrepresentation. ..............9

                     c.     The pricing charged by non-party retailers is not a
                            misrepresentation.......................................................10

              2.     There are no actionable implicit representations either..............................11

              3.     Plaintiff has not pled an actionable "omission" claim either. ........................14

       B.     The Court should dismiss the UCL claim because there was nothing
              unlawful, fraudulent or unfair about the packaging of the Fusion brand
              cartridges. ....................................................................................16

       C.     Additionally, Plaintiff lacks standing to pursue his CLRA and UCL claims
              due to his failure to plead injury in fact and reliance. ..................................20

       D.     The Court should dismiss the Express Warranty claim because Plaintiff does
              not identify the terms of any warranty, nor allege how any theoretical
              warranty was breached. ....................................................................22

       E.     The Court should dismiss the request for injunctive relief. ...........................23

       F.     This is not a case where Plaintiff needs more time to investigate in order to
              remedy the deficiencies in his Complaint. ...............................................24

IV.    CONCLUSION ...............................................................................................25

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

i

**TABLE OF AUTHORITIES**

Page(s)

CASES

*Affiliated Distillers Brands Corp. v. State Liquor Authority,*
    24 N.Y.2d 31, 246 N.E.2d 518 (1969) .................................................. 14

*Ashcroft v. Iqbal,*
    556 U.S. ___; 129 S.Ct. 1937, 1949 (2009) ................................. 4, 5, 18

*Baba v. Hewlett-Packard Co.,*
    2010 WL 2486353 (N.D. Cal. 2010) .................................................. 15

*Barbara's Sales, Inc. v. Intel Corporation,*
    227 Ill.2d 45, 879 N.E.2d 910 (Ill. 2007) ................................. 13, 14

*Bardin v. DaimlerChrysler Corp.,*
    136 Cal. App. 4th 1255 (2006) ............................................ 15, 19

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) .................................................... 5, 18

*Berryman v. Merit Property Mgmt. Inc.,*
    152 Cal.App.4th 1544 (2007) ................................................ 15

*Borden's Farm Products v. Ten Eyck,*
    11 F. Supp. 599 (S.D.N.Y. 1935) ........................................... 10

*Brockey v. Moore,*
    107 Cal.App.4th 86, 131 Cal.Rptr.2d 746 (2003) .......................... 5

*Brownfield v. Bayer Corp.,*
    No. 2:09-cv-00444, 2009 U.S. Dist. LEXIS 63057 (E.D. Cal. 2009) ................. 20

*Buller v. Sutter Health,*
    160 Cal.App.4th 981 (2008) ................................................ 15

*Cardinal Industries, Inc. v. Pressman Toy Corp.,*
    1996 WL 724730 (S.D.N.Y. 1996) ........................................... 11

*Carpenter v. Hamilton,*
    18 Cal.App.2d 69 (1936) ................................................... 18

*Caviness v. Horizon Community Learning Center, Inc.,*
    590 F.3d 806 (9th Cir. 2010) ............................................... 5

*Cel-Tech Communications Inc. v. Los Angeles Cellular Telephone Company,*
    20 Cal.4th 163 (1999)...................................................... 19

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

*Cel-Tech. LeGrama v. Fremont Investment & Loan,*
   2010 WL 5071600 (N.D. Cal. 2010)..........................................................................19

*Consumer Advocates v. Echostar Satellite Corp.*
   (2003) 113 Cal. App. 4th 1351.................................................................................12

*Cook, Perkiss & Liehe v. Collection Serv.,*
   911 F.2d 242 (9th Cir. 1990)....................................................................................13

*Daugherty v. American Honda Motor Co., Inc.,*
   144 Cal.App.4th 824, 51 Cal.Rptr.3d 118 (2006) .......................................6, 15, 16

*Eichorn v. Palm, Inc.,*
   2008 WL 102222 (Cal. App. 2008)............................................................................6

*Ford v. Hotwire,*
   2008 WL 5874305 (S.D. Cal. 2008) ..................................................................16, 17

*Freeman v. Time, Inc.,*
   68 F.3d 285 (9th Cir.1995)........................................................................................8

*Hall v. Time Inc.,*
   158 Cal.App.4th 847, 70 Cal. Rptr. 3d 466 (Cal. App. 2008)..................................21

*Hartless v. Clorox Co.,*
   2007 U.S. Dist. LEXIS 81686 (S.D. Cal. 2007)......................................................17

*Hauter v. Zogarts*
   (1975) 14 Cal. 3d 104..............................................................................................13

*Herrington v. Johnson & Johnson,*
   No. C 09-1597, 2010 U.S. Dist. LEXIS 90505 (N.D. Cal. Sept. 1, 2010)...............22

*Hodgers-Durgin v. de la Vina,*
   199 F.3d 1037 (9th Cir. 1999)..................................................................................23

*In re Actimmune Marketing Litigation,*
   614 F.Supp.2d 1037 (N.D. Cal. 2009)......................................................................13

*In re Sony Grand Wega HDTV Television Litigation,*
   2010 WL 4892114 (S.D. Cal. 2010) .........................................................................16

*In re Tobacco II Cases,*
   46 Cal. 4th 298 (2009).............................................................................................20

*Kearney et al. v. Hyundai Motor Company,*
   2010 U.S. Dist. LEXIS 68242 (C.D. Cal. June 4, 2010).......................................6, 20

*Kearns v. Ford Motor Co.,*
   567 F.3d 1120 (9th Cir. 2009)..................................................................................17

iii

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

*Laster v. T-Mobile USA, Inc.,*
  No. 05-1167, 2009 U.S. Dist. LEXIS 116228 (S.D. Cal. Dec. 14, 2009) .............................. 23

*Lozano v. AT&T Wireless Services, Inc.,*
  504 F.3d 718, 736 (9th Cir. 2007) ............................................................................................ 19

*Lyons v. Coxcom, Inc.,*
  2009 WL 6606941 (S.D. Cal. 2009) .................................................................................... 2, 3

*Marilao v. McDonald's Corp.,*
  632 F.Supp.2d 1008 (S.D. Cal. 2009) (Huff, J.) ....................................................................... 21

*McKinnis v. Kellogg USA,*
  2007 WL 4766060 (C.D.Cal., May 21, 2007).............................................................................. 5

*McKinniss v. General Mills, Inc.,*
  2007 WL 4762172 (C.D. Cal. 2007) ................................................................................... 8, 18

*Newcal Industries, Inc. v. Ikon Office Solutions,*
  513 F.3d 1038 (9th Cir. 2008)................................................................................................... 13

*People v. Casa Blanca Convalescent Homes,*
  159 Ca.App.3d 509, 530........................................................................................................... 19

*Peterson v. Cellco Partnership,*
  164 Cal.App.4 th 1583, 1590, 80 Cal.Rptr.3d 316, 321 (2008) ......................................... 16, 21

*Peterson v. Cellco Partnership,*
  80 Cal.Rptr.3d 316 (Cal. App. 2008) ....................................................................................... 21

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.,*
  227 F.3d 489 (5th Cir. 2000)..................................................................................................... 13

*Rubio v. Capital One Bank (USA), N.A.,*
  572 F.Supp. 2d 1157 (C.D. Cal. 2008)...................................................................................... 17

*Schreib v. The Walt Disney Company,*
  2006 WL 573008 (Ill. App. 2006)....................................................................................... 13, 14

*Scripps Clinic v. Sup. Ct.*
  108 Cal. App. 4th 917 (2003).................................................................................................... 19

*Simila v. American Sterling Bank,*
  2010 WL 3988171 (S.D. Cal. 2010) ......................................................................................... 19

*South Bay Chevrolet v. GMAC,*
  72 Cal.App.4 th 861, 886-887 (Cal. App. 1999) ....................................................................... 18

*Stearns v. Select Comfort Retail Corp.,*
  No. 08-2746, 2010 U.S. Dist. LEXIS 84777 (N.D. Cal. July 21, 2010) ............................ 22, 23

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

iv

*Sugawara v. Pepsico, Inc.,*
    2009 WL 1439115 .................................................................................... 5, 9

*Thrifty Oil Co. v. Linder,*
    91 Cal. App. 4th 1070 (Cal. App. 2001) ........................................ 10, 11

*Tyr Sport, Inc. v. Warnaco Swimwear, Inc.,*
    709 F.Supp2d 821 (C.D. Cal. 2010) ..................................................... 13

*Van Ness v. Blue Cross,*
    87 Cal. App. 4th (2001) ......................................................................... 16

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) ............................................................... 17

*Videtto v. Kellogg USA,*
    2009 WL 1439086 (E.D.Cal., May 21, 2009) .................................... 5, 8

*Wahl v. American Security Ins. Co.,*
    2010 WL 1881126 (N.D. Cal. 2010) ..................................................... 19

*Waldman v. New Chapter, Inc.,*
    714 F.Supp.2d 398 (E.D.N.Y. 2010) .................................................... 12

*Wiener v. Dannon Co., Inc.,*
    255 F.R.D. 658 (C.D. Cal. 2009) ............................................................ 6

*Wilens v. TD Waterhouse Group, Inc.,*
    120 Cal.App.4th 746 (Cal. App. 2003) ....................................... 6, 7, 16

*Wilkins v. National Broadcasting Co., Inc.*
    (1999) 71 Cal. App. 4th 1066 ............................................................... 16

*Williams v. Beechnut Nutrition Corp.,*
    185 Cal. App. 3d 135 (1986) ........................................................... 22, 23

*Williams v. Gerber Products Co.,*
    552 F.3d 934 (9th Cir. 2008) .................................................................. 9

*Williams v. PurduePharma Co.,*
    297 F. Supp. 2d 171 (D.D.C. 2003) .............................................. 21, 23

**OTHER CASES**

*Sands v. The Procter & Gamble Company,*
    Civil Action No. 08-cv-15170 (E.D. Mich.) ...................................... 24

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

v

**RULES**

Fed. R. Civ. P. 9(b) ..................................................................................... 4, 17, 18

Fed. R. Civ. P. 12 ............................................................................................ 3, 12

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 4

**STATUTES**

35 U.S.C. §101 ...................................................................................................... 3

35 U.S.C. §102 ...................................................................................................... 3

35 U.S.C. §103 ...................................................................................................... 3

Ca. Civ. Code §1750 ............................................................................................. 4

Ca. Civ. Code §17200 ...................................................................................... 4, 16

Cal. Civ. Code §§ 1572, 1573, 1709, 1711 ........................................................ 17

Cal. Civ. Code § 1770 ................................................................................... 5, 6, 14

Cal. Civ. Code § 1770(a) ................................................................................. 6, 16

Cal. Civ. Code §1770(a)(5) ................................................................................... 6

Cal. Civ. Code §1770(a)(7) ................................................................................... 6

Cal. Civ. Code §1770(a)(9) ................................................................................... 6

Cal. Civ. Code §1770(a)(16) ................................................................................. 6

Cal. Civ. Code §1780 ...................................................................................... 6, 20

Cal. Civ. Code §§17203-17204 ........................................................................... 20

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiff complains that he paid more for "Fusion Power" brand razorblade cartridges than he would have had he purchased "Fusion" blade cartridges for his Fusion Power razor handle. Plaintiff concedes, however, that there is a difference between the Fusion and the Fusion Power blade cartridges – a **patented** difference in the blade coatings. To Plaintiff, the difference is not sufficiently "meaningful," and he has therefore brought a putative class action on behalf of all purchasers of Fusion Power cartridges, unlimited by geography or time.

Similarly, Plaintiff claims that he was deceived into buying the Fusion Power cartridges. He does not claim that he was ignorant of the fact that he could purchase and use a Fusion cartridge, as is clearly stated on the packaging. Nor does he claim that any statement of fact on the packaging was false. Instead, he claims that the prices, the colors, and the brand names conveyed a "message" that the consumer "should" use the Fusion Power blades for "the best shaves."

This is not the first time these claims have been brought. Several law firms, including the ones representing Plaintiff in the present case, brought similar claims in the Eastern District of Michigan. That suit was a putative class action by several named plaintiffs, including a California resident. The court dismissed two of the three counts and invited a summary judgment motion on the third, before Plaintiffs elected to drop the case. The present case is a re-do in a new forum.

This Court should dismiss the Complaint in its entirety. It is not for the courts to determine if an admitted difference in products is sufficiently "meaningful" to justify a price differential, especially where, as here, the U.S. Patent Office has already determined the difference to be meaningful. Urging customers to use what P&G considered at the time to be its "best" blades to obtain "best" results – a non-explicit "message" alleged by Plaintiff - is no more than opinion or puffing insofar as one even can glean this message at all. There are no actionable statements of fact on the packaging that can be proven false, and the truth about compatibility of Fusion power handles and Fusion cartridges is clearly stated. Thus, Plaintiff cannot make out a UCL or CLRA claim. His express warranty claim similarly fails for failure to plead the terms of the alleged warranty and breach of those terms. This sweeping, ill-conceived lawsuit should be dismissed.

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

## II.    THE ALLEGATIONS AND CLAIMS IN PLAINTIFF'S COMPLAINT

### A.    The Fusion razor systems.

Defendant offers two types of razor systems at issue: the Gillette[1] Fusion and the Gillette Fusion Power. (Complaint ¶ 10). The systems are comprised of handles and replacement cartridges. A handle is sold with one or more shaving cartridges, and separate cartridges are also sold for "refill" purposes. There are "Fusion" brand handles and replacement cartridges, and then "Fusion Power" brand handles and replacement cartridges.

According to Plaintiff, the "Power" version of the system typically has an orange handle and orange blade cartridges. (Complaint ¶ 3). More importantly, the Fusion Power handle can be powered by a AAA battery to produce vibrations in the system when activated. (Complaint ¶ 10). According to Plaintiff, replacement cartridges are sold in an orange package with the words "Fusion Power" on the front. (Complaint ¶ 3).

There also is a non-powered version of the Fusion razor system. Here, the razor handle does not have a battery and hence, does not vibrate. Plaintiff contends that the system typically has a blue handle and blue replacement cartridges. (Complaint ¶ 3). Replacement cartridges are sold in a blue package with the word "Fusion" on the front. (Complaint ¶ 3). Plaintiff contends that these "Fusion" replacement cartridges are sold at a lower price than the "Fusion Power" replacement cartridges. ( Complaint ¶ 2).

It is undisputed that both replacement cartridges work with either handle. Every consumer has a choice. And there is wording on the back of the packaging confirming this choice by advising consumers that the two cartridge types are compatible across Fusion handles. The packaging for the Fusion cartridges states "All Fusion cartridges can be used with all Fusion razors," and the back of the packaging for the Fusion Power cartridges states "Fusion Power cartridges can be used with all Fusion razors." (Ex 1, Packaging).[2]

---

[1] Gillette is a division of Defendant The Procter & Gamble Company ("P&G").

[2] Plaintiff incorporated images of the packaging directly into his Complaint, so the Court may evaluate them in this Motion. *Lyons v. Coxcom, Inc.*, 2009 WL 6606941 (S.D. Cal. 2009).

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

**B.      The patented difference between the two replacement cartridges.**

Plaintiff acknowledges the patented differences between the two types of cartridges.[3] Paragraph 16 of the Complaint refers to the patent that describes the PowerGlide razorblades used in Gillette's Power cartridges, and Plaintiff concedes that there may be *real "measurable" differences* in the cutting forces exerted by the two types of blades.  (Complaint ¶ 16.)  *See* Ex. 2, Patent No. 5,985,459, Nov. 16, 1999 (Abstract, page 1: "Razor blades produced according to the present process exhibit significantly lower initial cutting forces which correlates with a more comfortable first shave" and Background of the Invention, page 8: "It is an object of the present invention to provide a razor blade cutting edge with a thin, well adhered coating which provides significantly improved initial cutting force effects when compared with the prior art.   This improvement in cutting force translates to an improved first shave and often translates to improved subsequent shaves.").  The United States Patent and Trademark Office deemed the coating for the Power cartridge blades as well as the method used to produce the coating to be patentable.  This is significant.  Among other requirements, for an invention to be patentable it must be (a) "new and useful" – 35 U.S.C. §101; (b) novel, i.e., not described in prior art – 35 U.S.C. §102; and (c) not "obvious" to a person skilled in the art – 35 U.S.C. §103.  The issuance of the patent signifies that the coating on the Fusion Power blades satisfies all these requirements.

**C.      Plaintiff's claims.**

Though the Complaint lacks any details about Mr. Edmundson himself, the crux of the Complaint is that he owns a Fusion Power razor handle and then bought Fusion Power replacement cartridges at a higher price than what he could have paid for the Fusion replacement cartridges.  He contends that the two types of replacement cartridges are "not meaningfully different" but that he

---

[3] Plaintiff refers to Defendant's patent (U.S. Patent No. 5,985,459, Nov., 16, 1999 (the "Patent")) but does not attach the Patent.  The Court may consider the contents of documents specifically referred to and incorporated into the complaint.  *Lyons v. Coxcom, Inc.,* 2009 WL 6606941 (S.D. Cal. 2009) (Huff, J.) (considering the subscriber agreement, terms and conditions, acceptable use policy, and limitations of service documents related to plaintiff's internet service under Rule 12).  The Court also may take judicial notice of matters of public record.  *Id.* (taking judicial notice of redline comparison of original and amended complaints and FCC statements as matters of public record).

3

was deceived into believing he *had* to buy the more expensive "Fusion Power" replacement cartridges.

Plaintiff does not allege that Defendant ever said this to him, at any time. There are *no* allegations that Defendant's advertising claimed that *only* the Fusion Power replacement cartridges would work with the Fusion Power razor handles. There are *no* allegations that Defendant's product packaging contained any such statement either. There are *no* allegations that Defendant ever told a single consumer it could only use the Fusion Power cartridges with the Fusion Power handles. Complaint ¶¶ 1-18. In fact, Plaintiff does not point to a single untruth on any Fusion packaging.

Rather, Plaintiff alleges a "deceptive message" (Complaint ¶3) somehow suggested by disparate elements from the products' packaging: (1) the trade name "Fusion Power" on the cartridge packaging, (2) the coloring on the packaging, and (3) the fact that retailers charge more for the Fusion Power cartridge than the Fusion cartridge. *See* Complaint, ¶¶ 3, 12. These three things supposedly deceived Plaintiff and all other Fusion Power handle owners into believing they had to buy the Fusion Power cartridges. This three-pronged "deceptive message" theory is the lynchpin for the entire lawsuit, and underlies Plaintiff's three causes of action: (1) violations of the California Unfair Competition Law ("UCL"), CA Bus. and Prof. Code §17200 *et seq*.; (2) violations of the California Consumer Legal Remedies Act ("CLRA"), Ca. Civ. Code §1750 *et seq*.; and (3) Breach of Express Warranty. Plaintiff filed the case as a putative "all purchasers" class action, whereby he wants to represent every person anywhere in the world who has ever purchased Fusion Power razor cartridges. *See* Complaint, ¶19.

## III.   ARGUMENT

This Motion is brought under Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 9(b). A court must determine whether the allegations plausibly state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. ___; 129 S.Ct. 1937, 1949 (2009). But, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

4

1   alleged." *Id.*  A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the

2   elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked

3   assertion[s]' devoid of 'further factual enhancement.'" *Id.* (*citing Bell Atlantic Corp. v. Twombly*,

4   550 U.S. 544, 562 (2007)) (internal citations omitted).  "Conclusory allegations of law and

5   unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."

6   *Caviness v. Horizon Community Learning Center, Inc.*, 590 F.3d 806, 812 (9th Cir. 2010).

7           This case is an instance where the court is in a position to consider the viability of the

8   alleged consumer law claims based on its review of the product packaging.  *See, e.g., Brockey v.*

9   *Moore*, 107 Cal.App.4th 86, 100, 131, 131 Cal.Rptr.2d 746 (2003) ("the primary evidence in a false

10  advertising case is the advertising itself").  Where a court can conclude as a matter of law that

11  members of the public are not likely to be deceived by the product packaging, dismissal is

12  appropriate. *Sugawara v. Pepsico, Inc.*, 2009 WL 1439115 at *3-4 (finding that the packaging for

13  Cap'n Crunch cereal and its use the term "Crunch Berries" was not misleading, as a matter of law);

14  *Videtto v. Kellogg USA*, 2009 WL 1439086 at *2 (E.D.Cal. 2009) (dismissing UCL, FAL and

15  CLRA claims based on allegations that consumers were misled into believing that "Froot Loops"

16  cereal contained "real, nutritious fruit"); *McKinnis v. Kellogg USA*, 2007 WL 4766060 at *3-4

17  (C.D. Cal. 2007) (same).

18          Plaintiff has not presented a plausible claim under any of his three counts.  Our arguments

19  are organized into six sections.  Section A addresses the merits of Plaintiff's CLRA claim.  Section

20  B address the merits of the UCL claim.  Section C explains that Plaintiff lacks standing under the

21  CLRA and the UCL.  Section D proffers the argument that Plaintiff has failed to state a claim under

22  his Express Warranty claim.  Section E shows that Plaintiff is not entitled to injunctive relief, and

23  Section F explains why Plaintiff cannot cure the fatal flaws in the Complaint by amending.

24          **A.      The Court should dismiss the CLRA claim because there are no alleged false**
25          **statements and Plaintiff does not contend that the product fails to do what it**
            **claims to do.**

26          The CLRA prohibits twenty-three specifically enumerated unfair methods of competition

27  and unfair or deceptive acts or practices in sale or lease consumer transactions.  Cal. Civ. Code §

28

1770; *see also Daugherty v. American Honda Motor Co., Inc.*, 144 Cal.App.4th 824, 51 Cal.Rptr.3d 118 (2006).

Plaintiff contends that Defendant violated four CLRA sections, 1770(a) (5), (7), (9) and (16). *See* Cal. Civ. Code § 1770(a) (5, 7, 9, and 16).[4] Although these sub-sections vary in their wording, all proscribe as unlawful certain *representations* or affirmations in advertising. *Id.* As a threshold matter, therefore, Plaintiff must prove the existence of a statement by Defendant that constitutes a deceptive trade practice. And if the alleged representation would not mislead a reasonable consumer, then the CLRA claim should be dismissed. *Wiener v. Dannon Co., Inc.,* 255 F.R.D. 658, 669 (C.D. Cal. 2009). Without a representation that would mislead a reasonable consumer, the CLRA is not sustainable. *See e.g., Kearney et al. v. Hyundai Motor Company,* 2010 U.S. Dist. LEXIS 68242, *7 (C.D. Cal. 2010) (finding that the CLRA claim was insufficiently pled where plaintiffs did "not identify any representations by Hyundai"). Even if he can clear these hurdles, Plaintiff also must establish that he suffered damages as a result of one of the prohibited practices. *See* Cal. Civ. Code §1780. Reliance, causation, and actual damages are indispensable elements of a CLRA claim. *Eichorn v. Palm, Inc.*, 2008 WL 102222 (Cal. App. 2008); *Wilens v. TD Waterhouse Group, Inc.*, 120 Cal.App.4th 746, 754, 15 Cal. Rptr.3d 271 (Cal. App. 2003). Plaintiff has not alleged a violation of the CLRA for the reasons set forth below.

1.   There are no alleged express misrepresentations at issue in this lawsuit.

The crux of Plaintiff's case is summarized in paragraph 12 of the Complaint: "Since the 2006 launch of the Fusion system, P&G's [sic] has consistently advertised that the Fusion manual blade cartridge should be used with the Fusion manual handles, while the more expensive Fusion

---

[4] Mr. Edmundson alleges that P&G violated the following provisions of §1770:

(5) Representing that the Fusion Power cartridges have characteristics, uses, or benefits which they do not have;

(7) Representing that the Fusion Power cartridges are of a particular standard, quality or grade if they are another;

(9) Advertising goods with intent not to sell them as advertised;

(16) Representing that Fusion Power cartridges have been supplied in accordance with a previous representation when they have not.

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1  Power blade cartridges should be used with the more expensive Fusion Power handles." However,

2  Plaintiff readily acknowledges that this alleged deception is not based on any actual false written

3  statement (or advertising spots) but instead is based on his subjective interpretation of disparate

4  elements from the products' *packaging alone*: (1) the trade name "Fusion Power" on the cartridge

5  packaging, (2) the coloring on the packaging, and (3) the fact that retailers charge more for the

6  Fusion Power cartridge than the Fusion cartridge. *See Id.* ("P&G has done this through package

7  color coding, prominently placing "Power" on the front of the Fusion Power blade cartridge

8  package, and by the price differential").   Plaintiff refers to this combination as the "deceptive

9  message." *See* Complaint, ¶3.

10     Other than to argue what he considers a "deceptive message" based on the product's name,

11  color and price, Plaintiff does not allege any false representation of fact:

12     •   There is no statement of any kind on the packaging indicating that consumers *must*
           use the Fusion Power replacement cartridges with the Fusion Power razor handles.

13
       •   There is *no* statement of any kind on the packaging indicating that consumers *cannot*
14         use the Fusion replacement cartridges with the Fusion Power razor handles.

15     •   There is no statement of any kind on the packaging indicating that the word "Power"
           on the front of the Power replacement cartridges has to do with the vibrating
16         characteristic of the vibrating handle, as opposed to the PowerGlideTM coating on
           the blades.

17     •   There is no statement of any kind on the packaging indicating that the
18         PowerGlideTM coating works in any particular way (e.g., with or without water,
           shaving cream, gel, or soap) or works for any particular number of shaves.

19     While not identifying any representations, Plaintiff ignores in his Complaint the most salient

20  statements on the packaging – the language telling consumers that the two types of cartridges are

21  compatible across Fusion handles.  The back of the Fusion cartridge package states:

22     **"All Fusion cartridges can be used with all Fusion razors."**

23  (Ex 1, Packaging, emphasis added).  Consumers were clearly informed at point of sale that they

24  could buy the Fusion cartridges to use with their Fusion Power handle.  The back of the Fusion

25  Power cartridge package states:

26     **"Fusion Power cartridges can be used with all Fusion razors."**

27  (Ex 1, Packaging, emphasis added).  Consumers were clearly informed at point of sale that they

28  could buy the Fusion Power cartridges to go with their Fusion handle.  A reasonable consumer has

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

7

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1    obligations as an active participant in the consumer transaction. *See, e.g., McKinniss v. General*

2    *Mills, Inc.*, 2007 WL 4762172 (C.D. Cal. 2007) (noting that reasonable consumers would be

3    expected to peruse the ingredient list to determine whether Berry Berry Kix contained actual fruit).

4    The test under the CLRA is whether a reasonable consumer likely would be deceived. *Freeman v.*

5    *Time, Inc.*, 68 F.3d 285, 289 (9th Cir.1995).  In *McKinniss,* the Central District of California

6    concluded that none of the five products at issue were packaged in a way that would mislead a

7    reasonable consumer.  *Id.* at *3.  Even in the context of an allegedly deceptive product name, a

8    reasonable consumer is expected to look at the product and peruse the contents, actions "which

9    would insure that the consumer was not deceived." *Id.* at *3.  The fact that products within the

10   Fusion family work together and that either a Fusion or Fusion Power cartridge can be used with a

11   Fusion Power handle is stated on the package, so any alleged confusion regarding compatibility is

12   not reasonable.  Plaintiff either did not read the entire package or chose to ignore certain language

13   on the package that would have erased any alleged confusion.

14        Even if one were to ignore the statements about compatibility (as Plaintiff does in the

15   Complaint), Plaintiff's three-pronged "deceptive message" theory does not constitute a

16   representation and so is not actionable as a matter of law.

17        a.    *The word "Power" in the name "Fusion Power" cartridges is not a*
             *misrepresentation.*
18

19        The use of words like "Power" or "PowerGlide[TM]" on packaging are not, themselves

20   "statements" of anything, but merely labels and identifiers.  Courts routinely dismiss cases where

21   the alleged deceptive message is the name of the product.  For instance, in *McKinnis v. General*

22   *Mills, Inc., supra,* the court not only found that consumers are charged with knowing the

23   information on a label, it held that trade names such as Berry Berry Kix, Trix, Fruity Cheerios, Trix

24   Yogurt, and Yoplait Go-Gurt would not deceive a reasonable consumer into thinking that the

25   products contain actual nutritious fruit despite allegedly deceptive trade names.   Similarly, in

26   *Videtto v. Kellogg U.S.A.*, 2009 WL 1439086 (E.D. Cal. 2009), the plaintiff brought a putative

27   CLRA, UCL, and warranty class action on behalf of purchasers of Froot Loops, alleging that the

28   packaging of Froot Loops cereal was deceptive and likely to mislead a reasonable consumer into

8

believing that the product contained actual fruit.  Plaintiff asserted that the packaging and marketing conveyed the message that Froot Loops contains real, nutritious fruit, and that he trusted Kellogg's label because the company has a long history of producing wholesome breakfast cereals.  The court noted that the packaging "truthfully depicts that cereal in the shape of multi-colored rings, rings that do not resemble any known fruit" and accurately described the contents as "sweetened multi-grain cereal."  The packaging contained no claim that the product is nutritious or designed specifically to meet the nutritional needs of toddlers or children.  "Accordingly, it is entirely unlikely that members of the public would be deceived in the manner described by plaintiff."  *See also, Sugawara v. Pepsico, Inc.*, 2009 WL 1439115 (E.D. Cal. 2009) (dismissing claim that "colorful Crunchberries, combined with the use of the word 'berry' in the product name, convey the message that Cap'n Crunch is not all sugar and starch, but contains redeeming fruit").

These decisions hold that product names and identifiers are not actionable statements that may predicate a fraud theory.[5]  The use of the word "Power" on the Fusion Power cartridges is no different.  While it might signal to some consumers that the "Fusion Power" cartridges *can* be used with "Fusion Power" handles (which is true!), it conveys nothing beyond that.  And more important, nothing about the regular Fusion cartridge packaging conveys that those cartridges *cannot* be used with the Fusion Power handles.  The use of the word "Power" as a brand name is not an actionable "misrepresentation" that can support Plaintiff's CLRA claim.

        b.    *The coloring on the packaging is not a misrepresentation.*

There is no support for the notion that the coloring on the packaging and cartridges represents a false statement of fact.  The marketplace is replete with examples of products that are the same except for color.  It is not for individual consumers to dictate whether retailers may charge

---

[5] In this respect, our case is fundamentally different from *Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008), where the 9th Circuit determined that the district court had improperly granted a motion to dismiss based on alleged deception involving the packaging Gerber used for its Fruit Juice Snacks.  The front of the package of "fruit juice snacks" contained the words "Fruit Juice" juxtaposed alongside images of various fruits while the side panel described the product as made "with real fruit juice and other all natural ingredients" and as "one of a variety of nutritious Gerber Graduates foods and juices."  *Id.* at 936.  Yet, the only fruit juice the product contained was white grape juice from concentrate and the two most prominent ingredients were corn syrup and sugar.  *Id.*  Thus, the court's reversal of the motion to dismiss was based on the existence of affirmative statements on the packaging that would deceive a reasonable consumer, as opposed to a deception based on the trade name of the product itself.

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1   more for a black turtleneck sweater than for an "identical" red one, for a tan Toll Brothers home

2   over an "identical" white version in the same neighborhood, or a white iPod over the black version.

3   Indeed, the fact that two "identical" products have different coloring itself may justify different

4   pricing under certain circumstances.

5       It cannot be plausibly argued that the color orange on the Fusion Power blade packaging

6   constitutes a statement of material fact. First, no reasonable consumer could reasonably believe that

7   orange versus blue coloring affects the functionality of the blades.   Thus, there can be no

8   misunderstanding that "orange" is better than "blue," particularly where the blades themselves are

9   silver in both cases – only the blade guards and lubrastrip are colored. Second, as the color images

10  on pages 2-3 of the Complaint show, the packaging colors include both blue and orange.   Third,

11  there is no allegation as to what Plaintiff understood the coloring to mean, or how it influenced him.

12      Even if Plaintiff were to suggest that he understood that "orange" blades must be used with

13  "orange" handles – a statement he does not make in the Complaint – this argument still fails.   There

14  is no <u>representation</u> to this effect by P&G, and no such statement on the packages.   Again, the

15  packages clearly state the compatibility of Fusion Power handles and Fusion cartridges, so no such

16  reading that elevates subjective impressions of color over clear statements in labeling would be

17  reasonable.

18              c.      *The pricing charged by non-party retailers is not a misrepresentation.*

19      Finally, differential product pricing charged by non-party retailers is not an express

20  statement at all, let alone a false factual representation by Defendant.   Often the only difference

21  between a name-brand and a generic version is that the name-brand has more advertising overhead.

22  This is not fraud.  In *Borden's Farm Products v. Ten Eyck*, identical grades of milk were separated

23  in the minds of the consumer by advertising alone.  11 F. Supp. 599 (S.D.N.Y. 1935).  As described

24  by Judge Learned Hand, "commercially the advertised brands had come in the minds of the

25  consumers to mean a different grade of milk...right or wrong, that is what it believed, and its belief

26  was the important thing." *Id.* at 601.  In *Thrifty Oil Co. v. Linder*, a gasoline merchant sold the

27  exact same fuel for two different prices, depending on whether the consumer was paying with cash

28  or credit.   91 Cal. App. 4th 1070, 1073, 111 Cal.Rptr.2d 253 (Cal. App. 2001).   Credit card

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

10

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1   customers got the same product as cash customers, but credit card transactions imposed a higher

2   cost structure on the merchant, so there was nothing objectionable or unfair about the different

3   prices. *Id.* at 1076; *see, also, Cardinal Industries, Inc. v. Pressman Toy Corp.*, 1996 WL 724730

4   (S.D.N.Y. 1996) (no unlawful price discrimination where toy manufacturer offered jumbo color dot

5   dominoes at two different prices, one in the catalog and another quoted to customers). Clearly, the

6   vague allegations in the Complaint that retailers charge more for one type of cartridge over the other

7   is not, itself, a false misrepresentation by Defendant -- especially when the price at shelf is

8   ultimately in the discretion of the retailer, not Defendant.

9        In sum, Plaintiff has not identified any representations at all. And Plaintiff's theory is even

10  weaker than in the various cases cited above because even if the Fusion Power cartridge packaging

11  is construed as conveying a particular "message", Plaintiff does not even allege that the "message"

12  is false. Plaintiff does not allege that any wording or statement on the Fusion Power cartridge

13  packaging is untrue, or even that the product fails to do what it claims it will do.

14              2.    There are no actionable implicit representations either.

15       The analysis above in Section A(1) establishes that there is no explicit actionable

16  representation of any kind, let alone one that consumers are obligated to buy the Fusion Power

17  replacement cartridges to use with their Fusion Power handles. And there are no express claims

18  about the comparative performance of one cartridge in relation to the other. To the contrary, the

19  undisputed facts are that (1) the Fusion and Fusion Power cartridges are objectively different, which

20  itself justifies different packaging and differential price tiering by retailers, and also that (2) the two

21  products are compatible, which is another fact that consumers may weigh in making their decision.

22       With no **explicit** statements at issue, Plaintiff is left with an *alleged* **implicit** "message" (*see*

23  Complaint ¶3) from the "color + price + name" theory he has created. In Paragraph 11 of the

24  Complaint, Plaintiff states that: "P&G conveys that the Power blade cartridges provides

25  meaningfully better shaves than the Fusion manual blade cartridge, and must be used with the

26  Fusion Power® handle to obtain the best shaves." Complaint, ¶11.

27       There are two parts to Plaintiff's alleged implicit "message" as described in Paragraph 11 of

28  the Complaint. His assertion that he was obligated to use the Fusion Power cartridges with his

handle is not plausible on its face.  Plaintiff's subjective belief cannot form the basis for a claim because there are no representations to this effect, and his belief is wholly inconsistent with the fact that the cartridges are compatible with either handle and that all consumers are told of this fact on the packaging.  Plaintiff cannot premise a fraud claim in this case on an alleged implicit message, when the explicit statements are to the contrary.  In *Waldman v. New Chapter, Inc.*, 714 F.Supp.2d 398, 400 (E.D.N.Y. 2010), the court granted a Rule 12 motion where a consumer plaintiff alleged that he was implicitly defrauded by the practice of selling spoonable whole food in a box over six inches tall that was only half-filled with the product.   The package accurately stated the volume of product and number of servings, so there were no false explicit representations.  Given that the explicit representations accurately stated the weight and number servings, there was no implied representation that the product contained more in these terms.  Plaintiff's assertion of an implicit claim regarding obligations to buy one cartridge over the other is without merit.

Next, any claim based on the second alleged implicit message that P&G conveys a false *comparative* message between the two types of replacement cartridges  – also is without merit.  In the first place, any implied "message" that the two products are *different* is, of course, indisputably true, as admitted by Plaintiff by virtue of acknowledging the patent in his Complaint.  It is specious for Plaintiff to suggest that an implied message that is true could form the basis of a claim.

Additionally, insofar as Plaintiff contends that P&G conveys that the Fusion Power cartridges are *better* through the color + price + name paradigm (Complaint, ¶11), but that in fact there is no "meaningful" difference between the blades, this claim too fails as a matter of law.  *See e.g.*, Complaint¶¶ 1, 3, 15, 16, 17 and 18.   For one, the existence of the patent proves that the Fusion Power blade does have an advanced feature (*i.e.*, is "better") than the regular Fusion blades.  And two, at most any "message" that Fusion Power cartridges are the best blades to use with the Fusion Power handle represents a non-actionable *opinion*, not a statement of fact.  Mere "puffing," and generalized representations as to the quality of a particular good or service are not factual representations that a given standard is met.  "Instead, they are boasts, […] which [a] reasonable consumer would [not] take as anything more weighty than an advertising slogan." *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1361, 8 Cal.Rptr.3d 22 (2003)

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

(holding that the terms "CD quality" and "crystal clear" were not factual representations); *see also Hauter v. Zogarts*, 534 P.2d 377, 381 (1975) (distinguishing between statements that indicate the seller's subjective opinion about the quality of a product from those that factually describe an important characteristic of the product); *see also Cook, Perkiss & Liehe v. Collection Serv.*, 911 F.2d 242 (9th Cir. 1990) (FTC case holding that general statements of superiority are not actionable); *see also Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 490 (5th Cir. 2000) (finding that the slogan Better Ingredients. Better Pizza. was not an objectifiable statement of fact upon which consumers would be justified in relying).[6]

The case of *Barbara's Sales, Inc. v. Intel Corporation*, 227 Ill.2d 45, 879 N.E.2d 910 (Ill. 2007) is on point.  There, plaintiffs alleged that the Pentium 4 processor was not sufficiently better than its predecessor, the Pentium III.  Plaintiffs identified one statement – the name "Pentium 4" that was communicated to the entire class.  The court found this product name no different from a promise that something was "the best," and that "the implicit representation inherent in the name Pentium 4 is mere puffery."  227 Ill.2d at 74.  "No reasonable consumer would rely on such an implicit assertion as the sole basis for making a purchase" because "there is nothing specific or explicit about the name…that can be said to have a specific attribute other than the actual processor itself."  *Id.*  In sum, "there is nothing in the '4 is better than 3' marketing formulation that presents more than a vague promise of something better."  *Id.* at 75.  In another Illinois case, *Schreib v. The Walt Disney Company*, 2006 WL 573008 (Ill. App. 2006), the court of appeals found that videotape product names of "Gold Collection" and "Masterpiece Collection" did not imply that the products had a lengthy life span.  "[E]ven if defendant had stated that the videotapes would last a lifetime,

---

[6] While analyzing the Lanham Act claims raised in *Papa John's*, the Fifth Circuit marked the distinction between factual claims and statements of general opinion.  *Id.* at 495-496.  To be actionable under the Lanham Act, "the statements at issue must be a specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Id.* at 496.  Saying you used "better ingredients" to make "better pizza" was puffery - a non-quantifiable claim of superiority.  *Id.* at 498-499.  "Whether a statement is puffery does not depend on the truth or falsity of a statement; it depends on the degree of generality or specificity."  *Tyr Sport, Inc. v. Warnaco Swimwear, Inc.*, 709 F.Supp2d 821, 830 (C.D. Cal. 2010) (holding that statement advising athletes to wear Speedo equipment if they wanted to compete at the highest level was puffery).  "There is a clear distinction in the law between puffery and fraud."  *In re Actimmune Marketing Litigation*, 614 F.Supp.2d 1037, 1055 (N.D. Cal. 2009) (citing *Newcal Industries, Inc. v. Ikon Office Solutions*, 513 F.3d 1038, 1053 (9th Cir. 2008) and *Papa John's, supra*).

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1   such a statement is mere expression of opinion or puffery." *Id.* at *3.   As in the *Intel* case, any

2   signaling through packaging that Fusion Power cartridges are "better" than Fusion cartridges is

3   mere puffing.

4        What makes this an even weaker case for Plaintiff is that the "puffing," to the extent it

5   exists, is based on the undisputed fact that the two cartridges are in fact technologically different

6   from one another and hence, Plaintiff cannot say that any alleged "difference" message is false.

7   The Fusion Power cartridges contain a patented "PowerGlide" coating, whereas the Fusion

8   cartridges do not.  Plaintiff concedes this point in the Complaint. *See* Complaint, ¶¶ 14, 16, and 17.

9   It is not relevant that Plaintiff believes the products are not different *enough* to suit him. *See*

10   Complaint, ¶ 17 (claiming that there is no "material difference" in comfort or performance between

11   the Fusion cartridges); *id.* at ¶18 (claiming plaintiff purchased a "parity product at a premium

12   price").  There is no support for the premise that the CLRA can be used by private individuals to

13   legislate the marketplace such that they may dictate to manufacturers precisely how "different"

14   products need to be in order to justify pricing decisions. *See Affiliated Distillers Brands Corp. v.*

15   *State Liquor Authority,* 24 N.Y.2d 31, 246 N.E.2d 518 (1969) (The subtle difference between 6 year

16   and 8 year versions of "Ancient Age Kentucky Straight Bourbon Whiskey, 86 Proof" was enough to

17   make the products different although they were the same alcohol content and not otherwise

18   physically different).

19        None of the sub-sections of the CLRA proscribes selling two compatible, but demonstrably

20   and measurably different, products at two different prices.  Cal. Civ. Code § 1770.

21             3.    Plaintiff has not pled an actionable "omission" claim either.

22        Plaintiff next turns to an apparent "omission" theory, asserting that Defendant should have

23   provided him additional information about the two types of cartridges.[7]  This argument fails to state

24   a claim as well.  The theory is untenable because there can be no "omission" claim when there is no

25

26       [7]  Plaintiff does not specify what was omitted.  The closest he comes is the suggestion
(Complaint ¶14) that the Fusion <u>Power</u> package should have given specific information about the
27   <u>Fusion</u> blades – namely, that the Fusion blades contained a "telomer" coating, albeit different in
thickness and uniformity.  There is no support for the notion that one product package must contrast
28   specific technical information about another separately sold product and that the failure to do so is
an actionable omission.

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1   underlying representation in the first place about the product that would be deceptive absent further

2   material information. The case of *Daugherty v. American Honda Motor Co.*, 144 Cal. App. 4th 824

3   (2006) is on point. In *Daugherty*, the plaintiff alleged that Honda violated the CLRA by concealing

4   and failing to disclose that certain model year vehicles contained a defect resulting in the slippage

5   or dislodgement of an oil seal in the "F22 engine." *Id.* at 827, 833-34. The Court of Appeal held

6   that the CLRA proscribes the concealment of characteristics or qualities that are *contrary to*

7   *representations actually* made. *Id.* at 834 (citations omitted). *Thus, there must have been a*

8   *representation about the part at issue in the first instance. Id.* at 835. In *Daugherty*, because there

9   was no allegation or evidence that Honda made any representations about the F22 engine in its

10   advertising or marketing materials in the first place, any omission to disclose the "defect" did not

11   state a claim under the CLRA. *Id. Daugherty* is fatal to any CLRA "omission" claim here because

12   Plaintiff has not identified *any* actionable representations whatsoever concerning the cartridges to

13   which further representations were needed.

14        In addition, there can be no actionable "omission" without a duty to disclose. In *Bardin v.*

15   *DaimlerChrysler Corp.*, the plaintiff alleged that DaimlerChrysler Corporation ("DCC") used

16   inferior tubular steel rather than iron in the exhaust manifolds of Jeep Grand Cherokees from 1991

17   through 1999. 136 Cal.App.4th 1255, 1274, 39 Cal.Rptr.3d 634 (2006), Plaintiff brought UCL and

18   CLRA claims, alleging DCC engaged in proscribed practices by not disclosing to consumers its use

19   of an inferior component part. *Id.* at 1273. The trial court sustained a demurrer in *Bardin* on both

20   the UCL and the CLRA claims, in part because DCC had no duty to disclose its use of the

21   supposedly inferior material. Where a plaintiff alleges that the defendant failed to disclose material

22   facts, he must first establish that the defendant had a duty to disclose those facts. *Berryman v. Merit*

23   *Property Mgmt. Inc.*, 152 Cal.App.4th 1544, 1557, 62 Cal.Rptr.3d 177 (2007). "A consumer is not

24   'likely to be deceived' by the omission of a fact that was not required to be disclosed in the first

25   place." *Baba v. Hewlett-Packard Co.*, 2010 WL 2486353 (N.D. Cal. 2010) (citing *Buller v. Sutter*

26   *Health*, 160 Cal.App.4th 981, 987, 74 Cal.Rptr.3d 47 (2008)). Plaintiff has not alleged a fiduciary

27   or confidential relationship existed between himself and Defendant – or even any relationship at all

28   – which normally is required for there to be a duty to disclose. *See, e.g., Wilkins v. National*

*Broadcasting Co., Inc.*, 71 Cal. App. 4th 1066, 1082, 84 Cal.Rptr.2d 329 (1999) (noting that a duty to disclose arises only when there is a fiduciary relationship between the parties or when there has been "some sort of transaction" between them) (internal citations omitted).  Here, there was no direct transaction between Defendant and Plaintiff; he does not allege he bought his products directly from Defendant.  It is not actionable to have failed to advise customers of something that Defendant had no duty to disclose in the first instance.

Finally, Plaintiff cannot show that he bought his Fusion Power cartridges as a result of any material omission.  Cal. Civ. Code § 1770 (a) (listing proscribed acts that are "intended to result or which result in the sale" of goods); *Wilens v. TD Waterhouse Group, Inc.* (2003) 120 Cal. App. 4th 746, 753-54 ("as a result of" language "mak[es] causation a necessary element of proof" for CLRA claims).  Plaintiff does not identify what material information was withheld from the packaging, which, as a result of its omission, "resulted" in Plaintiff's purchasing decision.

For all of the reasons cited above, the CLRA claim should be dismissed as a matter of law.

**B.    The Court should dismiss the UCL claim because there was nothing unlawful, fraudulent or unfair about the packaging of the Fusion brand cartridges.**

California's UCL prohibits any unlawful, fraudulent, or unfair business practice.  Cal. Civ. Code §17200.  Numerous decisions have held that the question of whether a particular practice or representation is actionable is a question of law to be determined by the court.  *See, e.g., Van Ness v. Blue Cross of California*, 87 Cal.App.4th 364, 376, 104 Cal.Rptr.2d 511 (2001).  Here, plaintiff's same "deceptive message" theory – again somehow suggested by disparate elements of package name, color and price – constitutes the alleged representation or business practice that Plaintiff challenges under the UCL.[8]

Regarding the "unlawful" prong of the statute, the UCL borrows violations of other laws and makes them independently actionable.  *Peterson v. Cellco Partnership*, 164 Cal.App.4th 1583, 1590, 80 Cal.Rptr.3d 316, 321 (2008).  Plaintiff links his UCL claim to his CLRA claim, as well as

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

---

[8]  Because of the similarity in the statutes and the fact patterns underlying UCL and CLRA claims, it is frequently the case that when a CLRA claim fails, the corresponding UCL claim is dismissed as well.  *See, e.g., In re Sony Grand Wega HDTV Television Litigation*, 2010 WL 4892114 (S.D. Cal. 2010); *Ford v. Hotwire*, 2008 WL 5874305 (S.D. Cal. 2008); *Daugherty v. American Honda Motor Company Inc.*, 144 Cal.App.4th 824 (2007).

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1   to anti-fraud statutes Cal. Civ. Code §§ 1572, 1573, 1709, 1711 and the "common law." *See*

2   Complaint 30.  Where there is no claim under the "borrowed" statute, there is no violation of the

3   UCL.  *See e.g., Rubio v. Capital One Bank (USA), N.A.*, 572 F.Supp. 2d 1157, 1168 (C.D. Cal.

4   2008).  As previously explained, Plaintiff's CLRA claim fails as a matter of law and it cannot form

5   the basis for his UCL claim.  And each of the alleged fraud statutes he cites cannot serve as

6   predicate violations for the same reasons – there are no actionable misrepresentations. *See* Cal. Civ.

7   Code §§ 1572, 1573, 1709, 1711.  Finally, a violation of the "common law" (which Plaintiff does

8   not identify) cannot support the "unlawful" prong of the UCL.  *Hartless v. Clorox Co.*, 2007 U.S.

9   Dist. LEXIS 81686, *18 (S.D. Cal. 2007).  As a result, there is nothing "unlawful" about

10   Defendant's packaging of its products in this case a matter of law.

11        The same is true for the "fraudulent" prong.  To establish fraudulent conduct, a plaintiff

12   must show statements that are likely to deceive a reasonable consumer. *Ford v. Hotwire, Inc.*, 2008

13   WL 5874305 (S.D. Cal. 2008) (citations omitted).  With no actionable representation or omission,

14   there can be no "fraud." *See* Cal. Civ. Code §§ 1572, 1573, 1709, 1711; *Kearns v. Ford Motor Co.*,

15   567 F.3d 1120, 1125 (9th Cir. 2009) (CLRA and UCL claims sound in fraud).

16        Moreover, fraud cannot support the UCL claim because Plaintiff has failed to plead fraud

17   with particularity as required by Fed. R. Civ. P. 9(b). *Kearns*, 567 F.3d at 1125; *Vess v. Ciba-Geigy*

18   *Corp. USA*, 317 F.3d 1097, 1102-05 (9th Cir. 2003).  Here, Plaintiff does not allege any facts about

19   his own purchase or use of the product.  He does not identify what he bought, when, why, how or

20   what he saw – let alone relied on in making his purchasing decision.

21        Such details are very important here.  For example, Plaintiff chose not to mention in the

22   Complaint whether he read the back of the packaging.  The alleged "deceptive message" theory

23   framed by Plaintiff is not actionable as "fraud" when he could have corrected his subjective

24   misunderstanding of these products merely by reading the packaging, which states that consumers

25   can use either cartridge with either handle.  The "likely to deceive" test requires that the deception

26   be probable, not merely possible, and deception is outright impossible here given that consumers

27   have access to the very information Plaintiff claims consumers need to avoid confusion in the first

28   place. *Ford v. Hotwire, Inc.*, 2008 WL 5874305 (S.D. Cal. 2008) (Court determined that the travel

reservations website Hotwire adequately disclosed the possibility that resort fees or other charges may be imposed, such that a reasonable consumer was not likely to be deceived; given Hotwire's disclosures, the court concluded that plaintiff failed to allege a violation of the fraudulent conduct prong of the UCL).

This same issue impacts the analysis of reasonable reliance.  As discussed above with regard to Plaintiff's CLRA claim, a reasonable consumer would be expected to at least look at the product and peruse the information on the package.  *See, e.g., McKinniss, supra.*  Therefore, even if he could point to an actual misrepresentation about the product – which, again, has not been pled Plaintiff cannot establish any reasonable reliance in light of Defendants' other labeling and marketing disclosures or that his interpretation is in accord with what a reasonable consumer would perceive.  *See, e.g., Carpenter v. Hamilton*, 62 P.2d 1397, 1399 (1936) (noting that "he has not been defrauded unless he has been misled, and he has not been misled where he has acted with actual or imputed knowledge of the true facts.")  Where buyers have undertaken to inspect something prior to purchase "they must be charged with knowledge of what they learned and what they would have learned in the exercise of ordinary care and diligence."  *Carpenter* at 1400.  The fact that either a Fusion or Fusion Power cartridge can be used with a Fusion Power handle is stated on the package.  Plaintiff's purported reliance on the name "Power," the color, and the price to discern some kind of "message" without also taking into account the explicit compatibility language is unreasonable as a matter of law.  "[H]aving undertaken the inquiry, plaintiffs were obliged to look with seeing eyes."  *Id.*  In any event, Plaintiff cannot survive a Motion to Dismiss by declining to disclose the existence of crucial facts, such as whether he read the package and why this would not have "cured" any alleged confusion he encountered.  This is precisely the sort of strategic vagueness that Rule 9(b), *Iqbal* and *Twombly* preclude as a matter of law.

Finally, Plaintiff has failed to plead facts showing that Defendant's business practices were "unfair" within the meaning of the UCL.  Historically, California courts have applied a balancing test to weigh the harm against the utility of the practice to determine if it was "unfair."  *See, e.g., South Bay Chevrolet v. GMAC*, 72 Cal.App.4th 861, 886-887, 85 Cal.Rptr.2d 301 (Cal. App. 1999).  As described in *People v. Casa Blanca Convalescent Homes*, "an unfair business practice occurs

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

18

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1    when it offends an established public policy or when the practice is immoral, unethical, oppressive,

2    unscrupulous, or substantially injurious to consumers."   159 Cal.App.3d 509, 530.   But the

3    California Supreme Court chided these tests as "too amorphous" and for providing "too little

4    guidance to courts and businesses."   *Cel-Tech Communications Inc. v. Los Angeles Cellular*

5    *Telephone Company*, 973 P.2d 527, 20 Cal.4th 163, 185 (1999).  The Court found that any finding

6    of unfairness to competitors must be "tethered to some legislatively declared policy or proof of

7    some actual or threatened impact on competition." 20 Cal.4th at 186-187.

8           While *Cel-Tech* was a case between competitors, courts routinely apply the test in consumer

9    matters.   For example, the court in *Scripps Clinic v. Sup. Ct.* followed the Supreme Court's

10   definition of "unfair" in *Cel-Tech* and applied it to a consumer.  108 Cal. App. 4th 917 (2003).  For

11   a practice to be "unfair," the specific public policy underlying the violation of the UCL must be

12   "tethered" to a specific constitutional, statutory or regulatory provision.   *See Bardin*, 136

13   Cal.App.4th at 1272 (citing *Scripps*, 108 Cal.App.4th at 940).  Courts may not simply impose their

14   own notions as to what is fair or unfair.  Rather, as set forth in *Cel-Tech*, the word "unfair" means

15   conduct that violates the policy or spirit of enumerated laws because its effects are comparable to or

16   the same as a violation of the law.  *Cel-Tech*, 20 Cal. 4th at 186-87.[9]  In our case, Plaintiff has not

17   pled the existence of a public policy to which Plaintiff's vague claims of disappointment and

18

19    [9] California courts continue to analyze the appropriate standards to evaluate UCL unfairness

20   claims. *See, e.g., Simila v. American Sterling Bank*, 2010 WL 3988171 (S.D. Cal. 2010) (noting
     that California courts remain split on whether to apply "tethering test" or "balancing test" and
     following *Cel-Tech* in consumer case); *Wahl v. American Security Ins. Co.*, 2010 WL 1881126

21   (N.D. Cal. 2010) (describing and applying both tests to consumer's UCL unfairness claim). The
     Ninth Circuit reviewed the various cases in *Lozano v. AT&T Wireless Services, Inc.* and concluded

22   that "adopting one standard does not necessitate rejection of the other." 504 F.3d 718, 736 (9th Cir.
     2007).  Thus, "the Ninth Circuit recognizes two competing tests to establish unfairness" including

23   the traditional balancing test and the tethered test set forth in *Cel-Tech*. *LeGrama v. Fremont
     Investment & Loan*, 2010 WL 5071600 (N.D. Cal. 2010).  Regardless, Plaintiff cannot meet the

24   older unfairness test either.  Using a packaging design that allegedly does not meet plaintiff's
     subjective expectations does not violate public policy. *Bardin*, 136 Cal. App. 4th at 1270.  Just as in

25   *Bardin*, Plaintiff has not alleged that Defendant made any *specific* representations regarding the part
     at issue (razar blades here, manifolds in *Bardin*), and does not allege any personal injuries. *Id.*

26   ("nothing about DCC's use of tubular steel exhaust manifolds . . . supports the conclusion that
     DCC's conduct was immoral, unethical, oppressive unscrupulous or substantially injurious to

27   consumers").  Put simply, the use of a particular coloring scheme and product name does not itself
     violate any law, standard or norm.  Moreover, having multiple options in the form of Fusion and

28   Fusion Power cartridges promotes competition, consumer choice, and product innovation, as
     demonstrated by the patented invention that differentiates the products in question.

1   confusion may be tethered.    There is no constitutional, legislative, or regulatory provision

2   concerning the coloring or naming of razor blade cartridges that Defendant has violated.

3        For all of these reasons, Plaintiff has failed to state a UCL claim on the merits and it should

4   be dismissed.

5        **C.**    **Additionally, Plaintiff lacks standing to pursue his CLRA and UCL claims due**

6           **to his failure to plead injury in fact and reliance.**

7        Only a private plaintiff who has suffered injury in fact and has lost money or property as a

8   result of such unfair competition may bring a UCL claim.    Cal. Civ. Code §§17203-17204.[10]

9   Similarly, CLRA claims may only be brought by "any person who suffers any damages as a result

10  of" one of the prohibited practices. Cal. Civ. Code §1780.  The phrase "as a result of" is a reliance

11  requirement. *In re Tobacco II Cases*, 207 P.3d 20, 40 (2009); *Kearney et al, v. Hyundai Motor Co.*,

12  *et al.*, 2010 U.S. Dist. LEXIS 68242 (C.D. Cal. 2010).

13       Plaintiff does not allege specific facts as to what *he* saw or relied on (if anything) when he

14  made his decision to buy the Fusion Power cartridges.    He does not allege that he even used his

15  Fusion Power cartridges at all, let alone that he failed to get value out of the purchase.    Plaintiff,

16  therefore, has not pled any facts showing that he suffered an injury in fact in order to establish

17  standing to pursue the UCL or CLRA claims.    Conclusory allegations that merely parrot the statute

18  like those found in Paragraph 29 of the Complaint are insufficient.  *See* Complaint ¶ 29 ("plaintiff

19  has suffered injury in fact and lost money or property as a result of defendant's conduct because he

20  purchase [sic] Fusion Power cartridges in reliance on P&G's deceptive claims . . .").    *See*

21  *Brownfield v. Bayer Corp.*, No. 2:09-cv-00444, 2009 U.S. Dist. LEXIS 63057, *10 (E.D. Cal. 2009)

22  ("bare and vague conclusions" regarding a plaintiff's alleged purchase of a product based on

23  misrepresentations was not enough to demonstrate reliance as a matter of law).

24       At most, the Complaint implies that Plaintiff bought Fusion Power cartridges.    Not every

25  consumer who buys a product and claims to have been personally dissatisfied has "lost money"

26  within the meaning of the UCL.  *Peterson v. Cellco Partnership*, 80 Cal.Rptr.3d 316 (Cal. App.

27

28      [10] These standing requirements are a result of Proposition 64, which was approved by voters on November 2, 2004, and which set forth new standing requirements for the UCL.

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

20

2008). In *Peterson*, plaintiffs alleged that their cell phone vendors violated the UCL by selling insurance without a license to do so. The California court of appeals affirmed that plaintiff lacked standing to bring a UCL claim. "[P]laintiffs have not shown they suffered an actual economic injury. Rather, they received the benefit of their bargain, having obtained the bargained for insurance and the bargained for price." *Id.* at 322. The California Court of Appeals reached the same result in *Hall v. Time Inc.*, 158 Cal.App.4th 847, 70 Cal. Rptr. 3d 466 (Cal. App. 2008). In *Hall*, the plaintiff based his UCL claim on allegations a book seller deceptively sent buyers invoices to pay for a book during a free trial period. *Id.* at 850. Plaintiff received the book, kept it, and did not make payment until after the free trial period expired. *Id.* The court noted that plaintiff did not allege he did not want the book, the book was unsatisfactory, or the book was worth less than what he paid for it, and so received the benefit of his bargain and did not have UCL standing. *Id.* at 855; *see also*, *Marilao v. McDonald's Corp.*, 632 F.Supp.2d 1008, 1013 (S.D. Cal. 2009) (Huff, J.) ("Plaintiff did not expend money on his gift card, as he alleges that he received it as a gift. Plaintiff does not allege that he lost money or property, as his gift card still retains its value to redeem it for McDonald's products"); *Williams v. PurduePharma Co.*, 297 F. Supp. 2d 171, 176 (D.D.C. 2003) ("Without alleging that a product failed to perform as advertised, a plaintiff has received the benefit of his bargain and has no basis to recover purchase costs."). This complaint does not allege that the Fusion products do not shave as they are claimed to shave or lack the features they are claimed to possess. In fact, Plaintiff points to no product or performance representation that did not deliver as promised. Instead, Plaintiff merely argues from colors, branding elements, and retailer pricing, which do not rise to the level of a product representation – let alone a *misrepresentation* upon which he relied. On the contrary, clear labeling can be relied upon to inform consumers how both Fusion and Fusion Power cartridges – products that have patentable, undeniable differences – are nonetheless equally compatible with Fusion Power handles.

Accordingly, Plaintiff lacks standing to pursue the CLRA and UCL claims and this is an independent reason to dismiss these claims.

**D.**   **The Court should dismiss the Express Warranty claim because Plaintiff does not identify the terms of any warranty, nor allege how any theoretical warranty was breached.**

Plaintiff's last claim is for breach of express warranty and it is illogical on its face.  The theory in this lawsuit is not that Defendant promised that the Fusion Power cartridges would perform in a certain manner, but that Plaintiff was confused about his option to use an entirely different Fusion cartridge altogether.  He has not identified in the Complaint any promises or affirmations that Defendant made about the nature and quality of the Fusion Power cartridges, nor would one expect him to do so given that that is not what this case is about.  But in light of his theory, the concept of a "warranty" claim does not make sense.

Plaintiff's claim is legally defective for the same reason that it is logically unsound – he has not identified the terms of any warranty as required in order to state a claim.  *See Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986) (a plaintiff must allege "the exact terms of the warranty"); *Stearns v. Select Comfort Retail Corp.*, No. 08-2746, 2010 U.S. Dist. LEXIS 84777, at *31 (N.D. Cal. 2010) (express warranty claim "must describe the exact terms of the warranty").  His generalized allegation in Paragraph 51 that the "terms of the contract include the promises and affirmations of fact made by P&G on its Fusion Power cartridge package . . . as described above" fails this requirement.  *See* Complaint ¶ 51.  That is because nowhere "above" in the body of the Complaint does he identify any such promises or affirmations on the packaging of the Fusion Power cartridges.  Was the promise that Fusion Power cartridges would work with the Fusion Power handle?  But this statement is of course true.  Was it that Fusion Power cartridges have a patented coating application called PowerGlide™?  This too is true.  No other potential affirmations are at issue in the case.

Plaintiff also has not alleged facts showing that Defendant breached any (undisclosed) promises.  Without specific facts showing that Defendant breached a warranty, there can be no claim as a matter of law.  *See Beechnut Nutrition Corp.*, 185 Cal. 3d at 142; *see also, Herrington v. Johnson & Johnson*, No. C 09-1597, 2010 U.S. Dist. LEXIS 90505, at *34 (N.D. Cal. 2010) ( no facts showing how alleged warranty on defendant's advertisements and product labels were breached).  Next, as set forth above concerning the CLRA claim and standing on the UCL and

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

22

1  CLRA claims, Plaintiff has not proffered facts showing that he relied on any such affirmations or

2  promises. This too is fatal to his claim. *See Beechnut Nutrition Corp.*, 185 Cal App. 3d at 142 (to

3  state a claim for breach of express warranty a plaintiff must allege "plaintiff's reasonable reliance"

4  on the terms of the warranty); *Stearns,* 2010 U.S. Dist. LEXIS 84777, at *31 (plaintiff must allege

5  that he "reasonably relied on [warranty] terms"). Similarly, and also dovetailing with the standing

6  analysis, Plaintiff has not alleged facts showing that he suffered an injury from any broken

7  promises. Nowhere in the Complaint does he allege that he could not use the Fusion Power

8  cartridges or that they were not suitable for their intended purposes. *See Beechnut Nutrition Corp.,*

9  185 Cal.App.3d at 142; *Stearns,* 2010 U.S. Dist. LEXIS 84777, at *31 (complaint must contain

10  allegations that "the breach caused injury to the plaintiff") (internal quotations omitted). *Cf. Purdue*

11  *Pharma Co.,* 297 F.Supp.2d at 176 ("Without alleging that a product failed to perform as

12  advertised, a plaintiff has received the benefit of his bargain and has no basis to recover purchase

13  costs."). For all these reasons, the express warranty claim fails as a matter of law and should be

14  dismissed.

15  **E.    The Court should dismiss the request for injunctive relief.**

16  Plaintiff's request for injunctive relief cannot be granted. *See* Complaint, Prayer for Relief.

17  To the extent Mr. Edmundson may have been mistaken before, he obviously now knows that he

18  may use Fusion cartridges with his Fusion Power handle. As such, he lacks standing to pursue

19  injunctive relief because there is no threat of future harm. *Laster v. T-Mobile USA, Inc.,* No. 05-

20  1167, 2009 U.S. Dist. LEXIS 116228, at *10 (S.D. Cal. 2009) ("Plaintiffs' knowledge [of alleged

21  false advertising] precludes them from showing likelihood of future injury ... Therefore, prospective

22  relief will not redress Plaintiffs' alleged injury."). The question of whether there might be unnamed

23  class members who suffer future injury is irrelevant. *See Hodgers-Durgin v. de la Vina,* 199 F.3d

24  1037, 1045 (9th Cir. 1999) ("Unless the named plaintiffs are themselves entitled to seek injunctive

25  relief, they may not represent a class seeking that relief. Any injury unnamed members of this

26  proposed class may have suffered is simply irrelevant to the question whether the named plaintiffs

27  are entitled to the injunctive relief they seek."); *Laster,* 2009 U.S. Dist. LEXIS, at *10 (stating that

28

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1   "unnamed class members' standing [does not] confer jurisdiction"). The focus is on the named

2   plaintiff, and Mr. Edmundson clearly lacks standing to pursue injunctive relief.

3       **F.**    **This is not a case where Plaintiff needs more time to investigate in order to**

4              **remedy the deficiencies in his Complaint.**

5       The existing Complaint is as good as it is going to get for Plaintiff. Leave to amend would

6   be futile because Plaintiff does not need more time to investigate his theory. His lawyers previously

7   represented six individuals (including a California resident) in a nearly-identical putative class

8   action that was pending in the Eastern District of Michigan. That case, called *Sands v. The Procter*

9   *& Gamble Company*, Civil Action No. 08-cv-15170 (E.D. Mich.), was filed in December 2008 and

10  abruptly dismissed by the *Sands* plaintiffs pursuant to an Order dated September 15, 2010, on the

11  eve of plaintiffs' obligation to respond to Requests for Admissions and Document Requests. P&G

12  paid no consideration for the dismissal and presumably it came about because Plaintiffs' counsel

13  were dissatisfied with the venue or how the *Sands* case was postured.

14      Indeed, the Court in the *Sands* matter had taken a dim view of Plaintiff's theory. It had

15  dismissed the plaintiffs' fraud and silent fraud theories (*see* Order Adopting Report and

16  Recommendation, dated March 29, 2010, Ex. 3), and the Magistrate had suggested to the parties

17  that they file dispositive motions on the remaining consumer fraud claim before the parties and the

18  Court spend time on any class certification motions. An early dispositive motion deadline therefore

19  was built into the *Sands* Case Management Order. *See* Case Management Order, Ex. 4). Given that

20  Mr. Edmundson could have joined in the *Sands* case if he wished, it is interesting that the same

21  lawyers would opt to start from zero in this new forum instead of having him join *Sands*, thereby

22  forcing Defendant to incur the expense of defending the claim in a different location over a year

23  after the *Sands* case was filed. But be that as it may, Plaintiff's Complaint is deficient, no amount

24  of re-pleading will fix the deficiencies, and this Court should dismiss the case as a matter of law.

25  Plaintiff will not be able to spin more marketing implications or affect more subjective

26  misunderstanding of product usage that can override the plain labeling disclosure of cartridge

27  compatibility nor refute that the cartridges are, in fact, different to a point of patentability.

28

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

IV.     **CONCLUSION**

For all the foregoing reasons, the Court should grant Defendant's Motion to Dismiss.

Dated: January 10, 2011                    DYKEMA GOSSETT LLP


By: s/ Daniel J. Stephenson
       Daniel J. Stephenson
       Attorneys for Defendant

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071