1   BLOOD HURST & O'REARDON, LLP
    TIMOTHY G. BLOOD (149343)
2   LESLIE E. HURST (178432)
    THOMAS J. O'REARDON II (247952)
3   PAULA M. ROACH (254142)
    600 B Street, Suite 1550
4   San Diego, CA 92101
    Telephone: (619) 338-1100
5   Facsimile: (619) 338-1101
    tblood@bholaw.com
6   lhurst@bholaw.com
    toreardon@bholaw.com
7   proach@bholaw.com

8   Attorneys for Plaintiff

9   [Additional counsel appear on signature page.]

10

11              UNITED STATES DISTRICT COURT

12            SOUTHERN DISTRICT OF CALIFORNIA

13  RYAN EDMUNDSON, On Behalf of          Case No.:  3:10-CV-02256-IEG(NLS)
    Himself, All Others Similarly Situated and
14  the General Public,                    CLASS ACTION

15              Plaintiff,                 PLAINTIFF'S OPPOSITION TO
                                           DEFENDANT'S MOTION TO DISMISS
16          v.
                                           Date:      April 1, 2011
17  THE PROCTER & GAMBLE                   Time:      10:30 a.m.
    COMPANY,
18                                         Judge:     Honorable Irma E. Gonzalez
                Defendant.                 Courtroom: 1, Fourth Floor
19                                         Date Filed: November 2, 2010
                                           Trial Date: None Set
20

21

22

23

24

25

26

27

28

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

1

TABLE OF CONTENTS

2

Page

3   I.      Introduction ............................................................................................................ 1

4   II.     Defendant's Motion to Dismiss ............................................................................. 2

5   III.    Statement of the Case ............................................................................................. 6

6           A.      P&G's Deceptive Message ........................................................................... 6

7           B.      P&G's Back of Packaging "PowerGlide" Statement Adds to the
8                   Deceptive Message ........................................................................................ 8

    IV.     Plaintiff's Economic Injury Provides Standing ..................................................... 9
9
            A.      UCL and CLRA Standing ............................................................................. 9
10
                    1.      Plaintiff Lost Money ......................................................................... 9
11
                    2.      Plaintiff Adequately Pleads Reliance .............................................. 11
12
            B.      Standing for Injunctive Relief ..................................................................... 12
13
    V.      Rule 9 Does Not Apply But Is Satisfied Nonetheless .......................................... 13
14
            A.      Rule 9 Does Not Apply ............................................................................... 13
15
            B.      Regardless, Plaintiff's Allegations Meet Rule 9(b)'s Particularity
16                  Requirement ................................................................................................. 14

17  VI.     Plaintiff States a Claim Under the CLRA .............................................................. 15

18  VII.    Plaintiff States a Claim for Violation of Each Prong of the UCL .......................... 20

19          A.      Unlawful Business Practices ....................................................................... 20

20          B.      Fraudulent Business Practice ...................................................................... 21

21          C.      Unfair Business Practices ............................................................................ 22

22  VIII.   Plaintiff States a Claim for Breach of Express Warranty ..................................... 23

23  IX.     Conclusion ............................................................................................................ 25

24

25

26

27

28

1

2

## TABLE OF AUTHORITIES

3

Page(s)

**CASES**

4

5

*Aron v. U-Haul Co. of California,*
    143 Cal. App. 4th 796 (2006)............................................................................................... 10

6

7

*Autodesk, Inc. v. Dassault Systemes Solidworks Corp.,*
    685 F. Supp. 2d 1001 (N.D. Cal. 2009) ............................................................................. 17

8

9

*Baba v. Hewlett-Packard Co.,*
    No. C 09-05946, 2010 U.S. Dist. LEXIS 59747
    (N.D. Cal. June 16, 2010) ............................................................................................... 19-20

10

11

*Barbara's Sales, Inc. v. Intel Corp.,*
    227 Ill. 2d 45 (2007) ........................................................................................................... 19

*Bardin v. DaimlerChrysler Corp.,*
    136 Cal. App. 4th 1255 (2006)............................................................................................ 19

12

13

14

*Bly-Magee v. California,*
    236 F.3d 1014 (9th Cir. 2001)............................................................................................. 14

15

16

*Brownfield v. Bayer Corp.,*
    No. 2:09-cv-00444-JAM-GGH, 2009 U.S. Dist. LEXIS 63057
    (E.D. Cal. July 2, 2009) ...................................................................................................... 12

17

18

*Cardinal Industries, Inc. v. Pressman Toy Corp.,*
    No. 96-4590, 1996 U.S Dist. LEXIS 18714
    (S.D.N.Y. Dec. 16, 1996)..................................................................................................... 18

19

20

*Castrol, Inc. v. Pennzoil Co.,*
    987 F.2d 939 (3d Cir. 1993)................................................................................................. 17

21

22

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
    20 Cal. 4th 163 (1999) .................................................................................................... 20, 23

23

24

*Chacanaca v. Quaker Oats Co.,*
    No. 10-0502, 2010 U.S. Dist. LEXIS 111981
    (N.D. Cal. Oct. 14, 2010)................................................................................................ 15, 17

25

26

*Chiron Corp. v. Genentech, Inc.,*
    268 F. Supp. 2d 1148 (E.D. Cal. 2002)......................................................................... 4, 8, 9

27

*Clorox Co. P.R. v. P&G,*
    228 F.3d 24 (1st Cir. 2000) ................................................................................................. 17

28

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

*Committee on Children's Television, Inc. v. General Foods Corp.*,
  35 Cal. 3d 197 (1983) ............................................................................................................ 18

*Consumer Advocates v. Echostar Satellite Corp.*,
  113 Cal. App. 4th 1351 (2003)............................................................................................. 15

*Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy*,
  4 Cal. App. 4th 963 (1992).................................................................................................... 20

*Cooper v. Pickett*,
  137 F.3d 616 (9th Cir. 1997)................................................................................................. 14

*Cortez v. Purolator Air Filtration Prods. Co.*,
  23 Cal. 4th 163 (2000) .......................................................................................................... 20

*Daugherty v. American Honda Motor Corp., Inc.*,
  114 Cal. App. 4th 824 (2006)............................................................................................... 19

*Day v. AT&T Corp.*,
  63 Cal. App. 4th 325 (1998).......................................................................................... 13, 16

*Deitz v. Comcast Corp.*,
  No. C 06-06352 WHA, 2006 U.S. Dist. LEXIS 94333
  (N.D. Cal. Dec. 21, 2006) ..................................................................................................... 13

*Dyson, Inc. v. Oreck Corp.*,
  No. 07-9633, 2009 U.S. Dist. LEXIS 19097
  (E.D. La. Mar. 4, 2009).......................................................................................................... 17

*Eminence Capital, LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003)............................................................................................... 25

*Fireside Bank v. Superior Court*,
  40 Cal. 4th 1069 (2007) ........................................................................................................ 11

*Fundin v. Chicago Pneumatic Tool Co.*,
  152 Cal. App. 3d 951 (1984)................................................................................................. 23

*Gruen v. Edfund & Van Ru Credit Corp.*,
  No. 09-00644, 2009 U.S. Dist. LEXIS 60396
  (N.D. Cal. July 15, 2009)....................................................................................................... 14

*Hall v. Time*,
  158 Cal. App. 4th 847 (2008)............................................................................................... 11

*Hartless v. Clorox Co.*,
  No. 06cv2705, 2007 U.S. Dist. LEXIS 81686
  (S.D. Cal. Nov. 2, 2007) ........................................................................................................ 21

BLOOD HURST & O'REARDON, LLP

*Hradel v. Griffith*,
  367 F.2d 851 (C.C.P.A. 1966) ........................................................................................ 8

*In re Holmes*,
  63 F.2d 642 (C.C.P.A. 1933) .......................................................................................... 8

*In re Mattel, Inc.*,
  588 F. Supp. 2d 1111 (C.D. Cal. 2008) ........................................................................ 13

*In re Steroid Hormone Prod. Cases*,
  No. B211968, 2010 Cal. App. LEXIS 154
  (Ct. App. Feb. 8, 2010) ................................................................................................. 11

*In re Tobacco II Cases*,
  46 Cal. 4th 328 (2008) ............................................................................................ *passim*

*Jenkins v. McKeithen*,
  395 U.S. 411 (1969) ...................................................................................................... 13

*Johns v. Bayer Corp.*,
  No. 09CV1935, 2010 U.S. Dist. LEXIS 10926
  (S.D. Cal. Feb. 9, 2010) .......................................................................................... 13, 14

*Johns v. Bayer Corp.*,
  No. 09CV1935, 2010 U.S. Dist. LEXIS 62804
  (S.D. Cal. June 24, 2010) ............................................................................................. 14

*Koh v. S.C. Johnson & Son, Inc.*,
  No. C-09-00927 RMW, 2010 U.S. Dist. LEXIS 654
  (N.D. Cal. Jan. 5, 2010) ............................................................................................... 10

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) ............................................................................................... 21

*Kowalsky v. Hewlett-Packard Co.*,
  No. 10-CV-02176-LHK, 2010 U.S. Dist. LEXIS 131711
  (N.D. Cal. Dec. 13, 2010) ............................................................................................ 12

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011) ..................................................................................... 1, 4, 9, 10

*Lavie v. Proctor & Gamble Co.*,
  105 Cal. App. 4th 496 (2003) ....................................................................................... 22

*Lima v. Gateway, Inc.*,
  710 F. Supp. 2d 1000 (C.D. Cal. 2010) ........................................................................ 16

*Marilao v. McDonald's Corp.*,
  632 F. Supp. 2d 1008 (S.D. Cal. 2009) ........................................................................ 10

*Mass. Mut. Life Ins.*,
  97 Cal. App. 4th 1282 (2002)...................................................................................... 11, 19

*McKell v. Washington Mut., Inc.*,
  142 Cal. App. 4th 1457 (2006)............................................................................. 4, 20, 22, 23

*Meyer v. Sprint Spectrum L.P.*,
  45 Cal. 4th 634 (2009) ........................................................................................................ 16

*Morey v. NextFoods, Inc.*,
  No. 10 CV 761 JM (NLS), 2010 U.S. Dist. LEXIS 67990
  (S.D. Cal. June 7, 2010) ............................................................................... 10, 11, 12, 24

*Morgan v. AT&T Wireless Servs. Inc.*,
  177 Cal. App. 4th 1235 (2009)...................................................................................... 11, 17

*Natural Res. Defense Council v. Southwest Marine, Inc.*,
  28 F. Supp. 2d 584 (S.D. Cal. 1998)................................................................................... 13

*Olivera v. Am. Home Mortgage Servicing, Inc.*,
  689 F. Supp. 2d 1218 (N.D. Cal. 2010) .............................................................................. 11

*People ex rel. Lockyer v. Fremont Life Ins. Co.*,
  104 Cal. App. 4th 508 (2002)............................................................................................. 20

*Peterson v. Cellco P'ship*,
  164 Cal. App. 4th 1583 (2008)........................................................................................ 9, 10

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.*,
  227 F.3d 489 (5th Cir. 2000).............................................................................................. 17

*Rubio v. Capital One Bank*,
  613 F.3d 1195 (9th Cir. 2010)................................................................................... 6, 16, 22

*Sanderson v. HCA–The Healthcare Co.*,
  447 F.3d 873 (6th Cir. 2006)............................................................................................... 14

*Sarausad v. Porter*,
  503 F.3d 822 (9th Cir. 2007)............................................................................................... 21

*Schnall v. Hertz Corp.*,
  78 Cal. App. 4th 1144 (2000).............................................................................................. 23

*Smith v. Wells Fargo Bank, N.A.*,
  135 Cal. App. 4th 1463 (2005)............................................................................................ 21

*State Farm Fire & Cas. Co. v. Superior Court*,
  45 Cal. App. 4th 1093 (1996).............................................................................................. 21

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

*Sybersound Records, Inc. v. UAV Corp.*,
   517 F.3d 1137 (9th Cir. 2007)..........................................................................................21

*Tanoh v. Dow Chem. Co.*,
   561 F.3d 945 (9th Cir. 2009)...........................................................................................12

*Thrifty Oil Co. v. Linder*,
   91 Cal. App. 4th 1070 (2001)..........................................................................................18

*Troyk v. Farmers Group, Inc.*,
   171 Cal. App. 4th 1305 (2009).........................................................................................10

*United States v. Ninety-Five Barrels*,
   265 U.S. 438 (1924)..........................................................................................................1

*Vasquez v. Superior Court*,
   4 Cal. 3d 800 (1971) ................................................................................................11, 23

*Von Koenig v. Snapple Bev. Corp.*,
   713 F. Supp. 2d 1066 (E.D. Cal. 2010)......................................................................10, 12

*Waldman v. New Chapter, Inc.*,
   714 F. Supp. 2d 398 (E.D.N.Y. 2010) .............................................................................19

*Warshaw v. Xoma Corp.*,
   74 F.3d 955 (9th Cir. 1996)..............................................................................................14

*Weinstat v. Dentsply Int'l, Inc.*,
   180 Cal. App. 4th 1213 (2010).................................................................................23, 24

*West v. Am. Tel. & Tel. Co.*,
   311 U.S. 223 (1940).........................................................................................................21

*Wilkins v. Nat'l Broad. Co., Inc.*,
   71 Cal. App. 4th 1066 (1999)..........................................................................................20

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008)....................................................................................*passim*

**STATUTES, RULES AND REGULATIONS**

Business & Professions Code
   §17200................................................................................................................20, 21
   §17204........................................................................................................................9
   §17500......................................................................................................................21

California Uniform Commercial Code
   §2313(1) ..................................................................................................................23

Civil Code
    §1572..........................................................................................................................21
    §1573..........................................................................................................................21
    §1709..........................................................................................................................21
    §1711..........................................................................................................................21
    §1770........................................................................................................9, 15, 16
    §1780(a) ..............................................................................................9, 16

Federal Rules of Civil Procedure
    Rule 8 ...........................................................................................................14, 22
    Rule 9 ...................................................................................................13, 14, 15
    Rule 9(b)............................................................................................14, 15, 22

**SECONDARY AUTHORITIES**

Class Action Fairness Action, 199 Stat. 4
    §2..............................................................................................................................12

BLOOD HURST & O'REARDON, LLP

1  **I.   Introduction**

2      "*It is not difficult to choose statements, designs and devices which will not deceive.*"

3  *United States v. Ninety-Five Barrels*, 265 U.S. 438, 443 (1924).[1]   Over 80 years later, the

4  California Supreme Court affirmed this common-sense principle:

5      Simply stated: labels matter.  The marketing industry is based on the premise
       that labels matter, that consumers will choose one product over another similar
6      product based on its label….

7  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 328 (2011).

8      Here, the Procter & Gamble Company ("P&G") uses its labels to deceive consumers

9  into believing that its higher-priced Fusion Power razor blades provide a superior shaving

10 experience to its lower-priced Fusion manual blades, and are required for use with its higher-

11 priced Fusion Power razor handles, and that the lower-priced Fusion manual blades can only

12 be used with its lower-priced Fusion manual razor handle.

13     To convey this message, P&G differentiates between the two types of systems by:

14 naming the expensive blades Fusion Power to correspond to the Fusion Power handles; color

15 coding the shaving systems (royal blue for the Fusion manual and orange for the Fusion

16 Power) so that consumers can readily match the razors to handles; prominently labeling the

17 orange blades with the "Power" moniker; falsely representing that only the Fusion Power

18 blades have "a patented blade coating," including a Fusion Power razor blade with the initial

19 purchase of a Fusion Power handle; and charging more for the Fusion Power blades to convey

20 to consumers that there is a meaningful difference.  The packages of each system appear as

21 follows:

22

23

24

25

26

27

28 [1]   Citations are omitted and emphasis is added throughout unless otherwise noted.

BLOOD HURST & O'REARDON, LLP

1
2
3
4
5
6
7
8
9
10

   

11
12   *See* Complaint at ¶12.[2]

13          The problem, however, is that the razor blades are the same.  The Fusion Power blades

14   and the Fusion manual blades are wholly interchangeable and provide the same shaving

15   experience.  Despite P&G's advertising to the contrary, the only material difference is the

16   color of the packaging, the word "Power" and the price.  The retail price for a four-pack of

17   Fusion Power replacement blades is about 20% more than the retail price for a four-pack of

18   Fusion manual replacement blades.

19          Based on these facts, plaintiff brings this consumer fraud and false advertising action,

20   alleging violation of California's Unfair Competition Law ("UCL"), violation of California's

21   Consumer Legal Remedies Act ("CLRA"), and breach of express warranty.

22   **II.     Defendant's Motion to Dismiss**

23          P&G asks for a complete dismissal by mischaracterizing plaintiff's Complaint as

24   something that is almost entirely unlike the Complaint.  Despite the inventiveness of P&G's

25   lawyers, the Complaint is ***not***: a "misunderstanding that 'orange' is better than 'blue,'" like

26   dictating that Apple should not charge more for "a white iPod over the [otherwise identical]

27   _____

28   [2]     "Complaint" refers Class Action Complaint filed November 2, 2010, Docket Entry ("D.E.") 1.  All "¶" references are to the Complaint.

BLOOD HURST & O'REARDON, LLP

1   black version," or similar to differential product pricing "between a name-brand and a generic

2   version."  Def's Mem. at 10.[3]  P&G's conduct is deceptive because its package (and other

3   advertising material) represents that there are meaningful differences that justify a price

4   differential when, in fact, those differences do not exist.  This is not a "misunderstanding," but

5   false advertising.

6   In 2008, the Ninth Circuit reversed the dismissal of UCL and CLRA claims in the

7   consumer product false advertising class action, *Williams v. Gerber Prods. Co.*, 552 F.3d 934

8   (9th Cir. 2008).  In *Williams*, the Ninth Circuit analyzed whether packaging and labeling of

9   Gerber's "Fruit Juice Snacks" were likely to deceive a reasonable consumer through the

10  product name, pictures, and labeling statements that the products contained fruit juice.  P&G

11  all but ignores *Williams*, relegating it to a cursory and dismissive footnote.  Def's Mem. at n.5

12  ("our case is fundamentally different from *Williams*").  Instead, P&G repeatedly attempts to

13  analogize the Complaint to cases where the conduct alleged was clearly not deceptive.  No

14  reasonable person would believe that Cap'n Crunch with Crunchberries cereal does not

15  actually contain a fruit apparently called the "crunchberry," or that there is no fruit in Froot

16  Loops cereal.[4]

17

18

19

20  ___

    [3]     "Def's Mem." refers to Defendant The Procter & Gamble Company's Memorandum of
21  Points and Authorities in Support of Motion to Dismiss, D.E. 9-1.

22  [4]     *See*, *e.g.*, Def's Mem. at 5, 9 (citing *Sugawara v. Pepsico, Inc.*, No. 2:08-1335-MCE-
    JFM, 2009 U.S. Dist. LEXIS 43127, at *8 (E.D. Cal. May 20, 2009) ("This Court is not aware
23  of … any actual fruit referred to as a 'crunchberry.'")); at 5 (citing *McKinniss v. Kellogg USA*,
    No. CV 07-2611 ABC (RCx), 2007 U.S. Dist. LEXIS 96106, at *11-*12 (C.D. Cal. Sept. 19,
24  2007) ("No reasonable consumer would view the trademark "FROOT LOOPS" name as
    describing the ingredients in the cereal.…  Plaintiffs' allegation that the cereal pieces
    themselves resemble fruit is not rational, let alone reasonable.")); at 5, 8 (citing *Videtto v.
25  Kellogg USA*, No. 2:08-cv-1324-MCE-DAD, 2009 U.S. Dist. LEXIS 43114, at *8 (E.D. Cal.
    May 20, 2009) ("Defendant uses the word 'Froot' as part of its trademarked name, and the
26  fanciful use of a nonsensical word cannot reasonably be interpreted to imply that the Product
    contains or is made from actual fruit.")); at 8, 18 (citing *McKinniss v. General Mills, Inc.*, CV
27  07-2521 GAF (FMOx), 2007 U.S. Dist. LEXIS 96107, at *15-*16 (C.D. Cal. Sept. 18, 2007)
    ("an image of a fruit (the purple Cheerio 'fruit') is permitted to indicate that product's
28  'characterizing flavor' and is not an affirmation that the product contains any fruit at all")).

BLOOD HURST & O'REARDON, LLP

1    Beyond ignoring controlling law and analogizing to inapplicable opinions, P&G's

2    arguments are built upon a series of mischaracterizations of plaintiff's allegations, the facts,

3    and applicable law.

4    First, P&G mischaracterizes the allegations about plaintiff's experience and argues that

5    plaintiff has not alleged reliance, deception or has suffered harm, and therefore has no

6    standing. Def's Mem. at 20-21. Plaintiff's allegations are straightforward and clear: plaintiff

7    purchased the more expensive Fusion Power blade cartridges in reliance on P&G's false

8    advertising that these blades where superior to the less expensive blades, thereby spending

9    more money for something he did not receive. ¶¶7, 22, 29, 36, 54. The payment of money in

10   reliance on P&G's misrepresentations meets the "lost money or property" requirement of the

11   UCL. Plaintiff hopes P&G will formally withdraw this argument, which is frivolous after the

12   California Supreme Court's recent decision in *Kwikset Corp.*, 55 Cal. 4th at 332-35, which

13   expressly rejected each of the arguments P&G makes here.

14   Second, P&G makes the misplaced, merits-based contention that because one of the

15   components of the Fusion Power blade has a patent based on characteristics and benefits the

16   blade does not have (the higher price it charges), is nonetheless *per se* justified. Def's Mem. at

17   3. Nonsense. To receive a patent, there is no requirement that the invention be superior to or

18   even have greater utility than alternatives. *Chiron Corp. v. Genentech, Inc.*, 268 F. Supp. 2d

19   1148, 1168 (E.D. Cal. 2002). In fact, the patent application itself reveals there are no material

20   benefits, a fact P&G ignores.

21   Third, P&G argues there are no actionable "statements of fact … that can be proven

22   false." Def's Mem. at 1. Not only is this argument based on an improper factual premise

23   about "proof," P&G misstates applicable law. Unfair business practices are actionable under

24   the UCL and CLRA if they are likely to deceive the reasonable consumer, including

25   representations on labels (including pictures and logos), omissions, and even "perfectly true

26   statement[s] couched in such a manner that [are] likely to mislead or deceive the consumer…."

27   *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1471 (2006). Here, P&G uses its

28   labels and other advertisements to represent that Power Fusion blades are better than Fusion

Blood Hurst & O'Reardon, LLP

1   manual blades and should be used with the Power Fusion handle, which is why it is able to

2   charge a price premium.

3        In arguing that its claims are not deceptive, P&G also misleadingly (and, at this stage,

4   improperly) contends that its false advertising is adequately disclaimed by different statements

5   on the back of its packaging.  Def's Mem. at 2, 7-8.  The ambiguous fine-print tucked away on

6   the back of the package does not say that the blades are functionally identical.  Instead, the

7   statement provides:[5]

8

9

10

11

12

13    

14

15

16

17

18

19        A defendant does not escape liability by making false representations, then disclaiming

20   it elsewhere.  Disclaimers, even unambiguous ones, do not preclude liability where "members

21   of the public are likely to be deceived."  *Williams*, 552 F.3d at 938-40.  In *Williams*, where the

22   defendant provided a more unambiguous disclaimer than does P&G, the Ninth Circuit rejected

23   the disclaimer argument advanced here:

24        We disagree with the district court that reasonable consumers should be
             expected to look beyond misleading representations on the front of the box to
25        discover the truth from the ingredient list in small print on the side of the

26   _____

27   [5]   The fine print on the Fusion Power blade packaging states: "For best results, power up
       with the Fusion Power razor.  Fusion Power cartridges can be used with all Fusion razors."
28   The fine-print on the Fusion manual blade packaging states: "All Fusion cartridges can be used
       with all Fusion razors."

BLOOD HURST & O'REARDON, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BLOOD HURST & O'REARDON, LLP

box…. We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield of liability for the deception.

*Id.* at 939; *see also Rubio v. Capital One Bank*, 613 F.3d 1195, 1204-05 (9th Cir. 2010) (reasonable consumers were likely to deceived by defendant's solicitation promise of a "fixed APR" despite an unqualified disclaimer that the APR was "subject to change").

For purposes of a motion to dismiss, the determination of whether an advertisement, including a label, is false or misleading under California's consumer protection laws is a fact-intensive one, not suitable to dismissal at the pleading stage. *Williams,* 552 F.3d at 939. In addition, the entire advertisement, which includes product labels, should be viewed as a whole, and not in isolation, as P&G does in its motion. *Id.* at 939, n.3; *see also* Def's Mem. at 4 (mischaracterizing the allegations as challenging "disparate" messages).

As to the breach of warranty claim, P&G's argument that it cannot discern the terms of the express warranty is feigned absurdity. Plaintiff does not just repeat verbatim the terms of the warranty, but includes pictures in the Complaint of the warranty language on the label. ¶12. Finally, P&G's argument that plaintiff lacks standing to pursue injunctive relief on behalf of the Class fails. Inquiry into appropriate remedies – remedies specifically provided under California's consumer protection statutes – is inappropriate at this stage.

## III.    Statement of the Case

### A.    P&G's Deceptive Message

P&G advertises and sells shaving systems (razor blade handles and razor blade cartridges) called Gillette Fusion manual and Gillette Fusion Power. The Fusion Power handle contains a battery operated device which causes the blade cartridge to vibrate, apparently resulting in a closer, more comfortable shave. P&G also has two different types of blades – Fusion Power blades for the Fusion Power system and Fusion manual blades for the Fusion manual system. P&G advertises the Fusion Power system, including the Fusion Power replacement blades, as providing a closer, more comfortable shaving experience.

1    Through a broad based campaign, P&G advertises that its more expensive Fusion
2    Power razor handles should be paired with its more expensive Fusion Power blades, and
3    Fusion manual and Fusion Power blades are different from each other in ways that are
4    meaningful to the user. ¶1. P&G communicates the deceptive message through a combination
5    of deceptive statements and omissions:

6    • First, it names the expensive blades "Fusion Power," corresponding with the
7    name of the battery operated "Fusion Power" handle. It names the less expensive blades
8    simply "Fusion manual" blades, corresponding with the name of the less expensive handle that
9    does not have a battery. ¶¶3, 12-13.

10    • Second, it color codes the two shaving systems so the consumer can readily
11    match up the handles with the replacement blades. Fusion manual handles and blade
12    cartridges, along with their packaging, are royal blue. Fusion Power handles and blade
13    cartridges, along with their packaging, are orange. ¶¶3, 12-13.

14    • Third, it prominently labels the orange blades with the "Power" moniker. ¶¶3,
15    12-13.

16    • Fourth, it states on the label of the Fusion Power blades that those blades have
17    "a patented blade coating for incredible comfort." The coating is "telomer." However, the
18    Fusion manual blades are also coated with telomere, though the Fusion manual blades package
19    fails to disclose this. ¶¶3, 14-15.

20    • Fifth, it charges more for the Fusion Power blades than for the Fusion manual
21    blades, further indicating the existence of a meaningful difference between the two types of
22    blade cartridges that does not exist. ¶¶2-3, 12-13, 18.

23    • Finally, when it sells the Fusion Power blade handles, P&G gives the consumer
24    a Fusion Power blade in the handle, but not a Fusion manual blade. ¶12.

25    In reality, there is no difference between the Fusion Power and Fusion manual blade
26    cartridges other than the price. ¶¶2-3, 12-18. The retail price for a four-pack of Fusion Power
27    blades is approximately 20% more than the retail price for a four-pack of Fusion manual
28    blades. ¶2. The only reason one would purchase the Fusion Power blades instead of the

BLOOD HURST & O'REARDON, LLP

1    Fusion manual blades is because one would believe there was a meaningful difference between

2    the two, or one must use the Fusion Power blades with the Fusion Power handle.   Not

3    surprisingly, plaintiff Edmundson read the claims on the Fusion Power label, believed they

4    were true, and purchased Power Fusion in reliance on P&G's advertised claims.   ¶7.

5              **B.   P&G's Back of Packaging "PowerGlide" Statement Adds to the**
              **Deceptive Message**
6

7              P&G is correct that, as alleged in ¶¶16-17, a coating on part of the Fusion Power blade

8    – the so-called "PowerGlide" coating – received a patent.   However, P&G is wrong that this

9    means the Fusion Power cartridge has "an advanced feature," "is better," or justifies the price

10   premium and negates the deceptive advertising.   Nor does plaintiff concede that there "may be

11   real 'measureable' differences" between the blades.   *Compare* Def's Mem. at 3 *with* ¶¶14-17

12   ("there is no material difference" between the blades).   Most important, the mere existence of a

13   patent has **no** relevance to this motion.   In truth, the admissions surrounding the PowerGlide's

14   patent application are further evidence of P&G's deceptive message.   *See* ¶¶16-17.

15             As alleged, in the PowerGlide's patent application, P&G concedes that at best, any

16   possible utility is limited to first blade strokes, and even then only to a dry shave.   ¶¶16-17.

17   Neither P&G's motion nor its product packaging hint at this material fact.   Instead, P&G's

18   motion and packaging deceptively transform the existence of a patent into an admission that

19   the telomer coating on the Fusion Power cartridge is "better" than the telomer coating on the

20   Fusion manual cartridge.   While true that an invention must be useful to receive a patent, "the

21   fact that an invention has only limited utility [here: first shave] and is only operable in certain

22   applications [here: dry shave] is not grounds for finding lack of utility."   *Chiron Corp.,* 268 F.

23   Supp. 2d at 1168 (quoting *Envirotech Corp. v. Al George, Inc.,* 730 F.2d 753, 762 (Fed. Cir.

24   1984)).   Further, "[a]n invention need not be the best or the only way to accomplish a certain

25   result, and it need only be useful to some extent and in certain applications…" *Id.*; *see also*

26   *Hradel v. Griffith,* 367 F.2d 851, 854 (C.C.P.A. 1966) ("Superiority need not be shown."); *In*

27   *re Holmes,* 63 F.2d 642, 643 (C.C.P.A. 1933) ("if an invention be useful in itself, it is

28   immaterial upon the question of patentability whether the invention be of greater or less

BLOOD HURST & O'REARDON, LLP

1   usefulness than like devices or products shown in the prior art"). Anything other than proof of

2   "total incapacity" by clear and convincing evidence will not establish a non-utility defense

3   under the patent laws. *Chiron*, 268 F. Supp. 2d at 1168 (citing *Moleculon Research Corp. v.*

4   *CBS, Inc.,* 793 F.2d 1261, 1269 (Fed. Cir. 1986)). Thus, the fleeting and immaterial telomer

5   coating on the Fusion Power cartridge (mentioned only on the back of the Fusion Power

6   cartridge packaging) does not support P&G's Motion.

7       **IV.    Plaintiff's Economic Injury Provides Standing**

8               **A.    UCL and CLRA Standing**

9           Standing under the UCL requires that the named plaintiff has suffered injury in fact

10  and has "lost money or property as a result of" defendant's unfair business practices. Bus. &

11  Prof. Code §17204.[6] Similarly, though it is not construed as standing requirement, under the

12  CLRA an action may be brought by "[a]ny consumer who suffers any damage as a result of the

13  use or employment by any person of a method, act, or practice declared to be unlawful by

14  Section 1770." Civ. Code §1780(a).

15              **1.    Plaintiff Lost Money**

16          The recent California Supreme Court decision in *Kwikset* has settled the issue of

17  standing in UCL cases and, in doing so, has rejected P&G's very arguments and the cases

18  upon which it relies. *See Kwikset*, 51 Cal. 4th at 332-35 (rejecting Court of Appeal's holding,

19  and reliance on *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583 (2008), that "consumers

20  who receive a fully functioning product have received the benefit of their bargain, even if the

21  product label contains misrepresentations that may have been relied upon by a particular class

22  of consumers").

23          P&G argues that plaintiff's payment of money is not "lost money" for UCL standing if

24  he received the "benefit of the bargain," *i.e.*, if he paid for razor blades and got razor blades.

25  Def's Mem. at 20-21 (citing *Peterson*, 164 Cal. App. 4th 1583 and *Hall v. Time,* 158 Cal. App.

26

27  [6]      P&G's standing argument for the UCL and CLRA is limited to statutory standing.
P&G does not argue that plaintiff lacks standing under Article III's requirements (injury in
28  fact, traceability, and redressability), which are all properly alleged. ¶7.

*BLOOD HURST & O'REARDON, LLP*

1   4th 847, 855 (2008)).    However, *Kwikset* squarely rejected the "benefit of the bargain"

2   argument, and the cases upon which P&G relies, and found that a plaintiff who purchases a

3   product based on misrepresentations has standing.  51 Cal. 4th at 332 (rejecting *Peterson* and

4   finding that plaintiffs who "bargained for locksets that were made in the United States [but]

5   got ones that were not" had standing); *see also Troyk v. Farmers Group, Inc.*, 171 Cal. App.

6   4th 1305, 1348, n.30 (2009) (rejecting *Peterson's* and *Hall's* "benefit of the bargain"

7   reasoning); *Aron v. U-Haul Co. of California,* 143 Cal. App. 4th 796, 802-03 (2006) (payment

8   of money due to the defendant's acts of unfair competition establish UCL standing); *Morey v.*

9   *NextFoods, Inc.*, No. 10 CV 761 JM (NLS), 2010 U.S. Dist. LEXIS 67990 (S.D. Cal. June 7,

10   2010), at *5 ("Plaintiff's allegations that she purchased GoodBelly products in reliance on

11   NextFood's advertising is sufficient to create standing under [the UCL].").[7]

12       ***Even if*** the faulty "benefit of the bargain" reasoning were applied, plaintiff did not

13   receive the product he "bargained" for because he paid for Fusion Power razor blades that cost

14   substantially more than the materially identical Fusion manual cartridges. *Kwikset,* 51 Cal. 4th

15   at 334 ("[A] buyer forced to pay more than he or she would have is harmed at the moment of

16   purchase, and further inquiry ... is unnecessary."); *Von Koenig v. Snapple Bev. Corp.*, 713 F.

17   Supp. 2d 1066, 1078 (E.D. Cal. 2010) ("a plaintiff may sufficiently allege injury [under the

18   UCL and CLRA] where she contends that she did not receive the benefit of the bargain

19   because a purchased product cost more than similar products without misleading labeling");

20   *Koh v. S.C. Johnson & Son, Inc.*, No. C-09-00927 RMW, 2010 U.S. Dist. LEXIS 654, at *4-*5

21   (N.D. Cal. Jan. 5, 2010) (same); ¶53 (P&G acted improperly "by not providing the Fusion

22   Power cartridges as described above and which could provide the benefits described above.");

23   *Contra. Peterson*, 164 Cal. App. 4th at 1591 ("[Plaintiffs] received the benefit of their bargain,

24   having obtained the bargained for insurance at the bargained for price").

25

26

27   [7]    P&G's citation to *Marilao v. McDonald's Corp.*, 632 F. Supp. 2d 1008, 1013 (S.D. Cal. 2009), where plaintiff complained that he could not redeem his free McDonald's gift card for cash, is not relevant to these facts. Def's Mem. at 21; ¶7 (plaintiff spent money on Fusion

28   Power blade cartridges).

1    P&G also cites to *Hall*, 158 Cal. App. 4th at 854, although even *Hall* establishes

2    plaintiff's standing under these circumstances.  Def's Mem. at 21.  *Hall* notes that a plaintiff

3    has standing when he pays higher insurance premiums because he "expended money due to the

4    defendant's act of unfair competition." 158 Cal. App. 4th at 854.

### 2.    Plaintiff Adequately Pleads Reliance

6    P&G contends that plaintiff does not allege that he relied on the misrepresentations.

7    Def's Mem. at 20.  This is simply false.  Plaintiff "purchased Fusion Power cartridges in

8    reliance on these claims." ¶7.  P&G next argues (by citing to an unpublished district court

9    opinion) that plaintiff's "conclusory" allegations are insufficient."[8]  Def's Mem. at 20.

10   P&G is wrong again.  Plaintiff need not "plead with an unrealistic degree of specificity

11   that the plaintiff relied on particular advertisements or statements" when the unfair practice is a

12   fraudulent advertising campaign and need not "demonstrate individualized reliance on specific

13   misrepresentations to satisfy the reliance requirement." *Tobacco II*, 46 Cal. 4th at 327-328;

14   *see also Morgan v. AT&T Wireless Servs. Inc.*, 177 Cal. App. 4th 1235, 1258 (2009)

15   ("Plaintiffs were not required, as AT&T asserts, to plead the specific advertisements or

16   representations they relied upon in making their decision to purchase the [product].").

17   Moreover, reliance is presumed where the misrepresentation is a material misrepresentation or

18   omission. *Mass. Mut. Life Ins.*, 97 Cal. App. 4th 1282, 1294-95 (2002); *Vasquez v. Superior*

19   *Court*, 4 Cal. 3d 800, 814 (1971).  Indeed, very similar reliance allegations have been found

20   sufficient.  In *Morey*, plaintiff alleged she "'was exposed to and saw NextFood's claims by

21   reading the product label, purchased GoodBelly products in reliance on these claims, and

BLOOD HURST & O'REARDON, LLP

---

[8]    Named plaintiff reliance is only required for UCL "fraudulent" prong claims. *In re Tobacco II Cases*, 46 Cal. 4th 328, 326, n.17 (2008) ("There are doubtless many types of unfair business practices in which the concept of reliance, as discussed here, has no application."); *Fireside Bank v. Superior Court*, 40 Cal. 4th 1069, 1090 (2007) (applying different causation standard to unlawful prong); *In re Steroid Hormone Prod. Cases*, No. B21968, 2010 Cal. App. LEXIS 154, at *3 (Ct. App. Feb. 8, 2010) ("where the UCL claim is based upon the unlawful prong of the UCL" there is "no issue regarding reliance"); *Olivera v. Am. Home Mortgage Servicing, Inc.*, 689 F. Supp. 2d 1218, 1224 (N.D. Cal. 2010) ("For claims based on the 'unfair' or 'unlawful' prong of the UCL claim, courts have held that the plaintiff ... may allege 'causation more generally.'").  P&G does not bother to distinguish the various causation standards used for the different UCL prongs.

1   suffered injury in fact and lost money as result of the unfair competition.'" 2010 U.S. Dist.

2   LEXIS 67990 at *4. Judge Miller found that though "Plaintiff's allegations regarding reliance

3   and injury are indeed 'short and plain' ... they nonetheless give NextFoods sufficient notice of

4   the claim" and lay "out the required causal connection between 'reading the product label' and

5   purchasing the product 'in reliance on these claims.'" *Id.*[9]

6       **B.      Standing for Injunctive Relief**

7       P&G argues plaintiff lacks standing to seek the statutory remedy of injunctive relief

8   because he is now aware of P&G's misrepresentations and thus cannot be harmed by them in

9   the future. Def's Mem. at 23. Under P&G's theory of standing, no plaintiff in any false

10  advertising case could obtain injunctive relief in federal court. This is wholly contrary to the

11  purpose of California's consumer protection statutes. As the California Supreme Court stated

12  in *Tobacco II*, "the primary form of relief available under the UCL to protect consumers from

13  unfair business practices is an injunction ... [t]he purpose of such relief ... is to protect

14  California's consumers against unfair business practices by stopping such practices in their

15  tracks." [10] 46 Cal. 4th at 319-20. To this end, federal courts routinely permit injunctive relief

16  in false advertising cases. *See*, *e.g.*, *Kowalsky v. Hewlett-Packard Co.*, No. 10-CV-02176-

17  LHK, 2010 U.S. Dist. LEXIS 131711, *4, *37-*39 (N.D. Cal. Dec. 13, 2010) (denying motion

18  to dismiss UCL and CLRA claims for injunctive relief based on false advertising of printer's

19  abilities); *Von Koenig*, 713 F. Supp. 2d at 1080 (denying motion to dismiss UCL and CLRA

20  claims for injunctive relief based on false advertising of beverages as "all natural").

21

22

---

23  [9]     Nothing in *Brownfield v. Bayer Corp.*, No. 2:09-cv-00444-JAM-GGH, 2009 U.S. Dist.
LEXIS 63057, at *11 (E.D. Cal. July 2, 2009), cited by defendant, requires a different
24  conclusion because in *Brownfield*, plaintiffs did not allege they had ever "viewed" either of the
two television commercials at issue.

25  [10]    P&G's theory of standing also defeats the purpose of the Class Action Fairness Act
("CAFA") jurisdiction and leaves the federal courts hamstrung in providing complete relief to
26  consumers in false advertising cases. *See* CAFA, 199 Stat. 4, §2 at 5 (CAFA is intended to
"assure fair and prompt recoveries for class members with legitimate claims ... by providing
27  for Federal court consideration of interstate cases of national importance ... and [] benefit
society by [] lowering consumer prices."); *see also Tanoh v. Dow Chem. Co.*, 561 F.3d 945,
28  954 (9th Cir. 2009) (quoting same).

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

1    Because plaintiff has demonstrated standing to litigate the case in controversy that is

2  before the court, analysis into whether plaintiff has standing to seek a particular remedy

3  afforded by the statutes under which he sues is improper.  *See Natural Res. Defense Council v.*

4  *Southwest Marine, Inc.*, 28 F. Supp. 2d 584, 586 (S.D. Cal. 1998) ("A party either has standing

5  for the purposes of the 'case or controversy' requirement of Art. III or it does not.  That simple

6  inquiry regarding a party's injuries and their justiciability for purposes of the case – though

7  fraught with difficulties – is not further extended into, and made more troublesome by, a

8  microscopic analysis of standing for each remedy sought."); *Jenkins v. McKeithen*, 395 U.S.

9  411, 423 (1969) ("[T]he concept of standing focuses on the party seeking relief, rather than on

10  the precise nature of the relief sought.").  Accordingly, P&G's challenge to plaintiff's request

11  for injunctive relief should be denied.[11]

12  **V.     Rule 9 Does Not Apply But Is Satisfied Nonetheless**

13       **A.     Rule 9 Does Not Apply**

14    Mr. Edmundson's UCL and CLRA false advertising claims are "distinct from common

15  law fraud."  *Tobacco II*, 46 Cal. 4th at 312.  "A [common law] fraudulent deception must be

16  actually false, known to be false by the perpetrator and reasonably relied upon by a victim who

17  incurs damages.  None of these elements are required to state a claim … under the UCL."  *Id.*;

18  *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 332 (1998).  This distinction reflects the UCL's

19  focus on the defendant's conduct, rather than the plaintiff's damages, in service of the statute's

20  larger purpose of protecting the general public against unscrupulous business practices.

21  *Tobacco II*, 46 Cal. 4th at 312.  For example, in *Johns v. Bayer Corp.*, No. 09CV1935, 2010

22  U.S. Dist. LEXIS 10926, at *13-*14 (S.D. Cal. Feb. 9, 2010), the court held that false

23  advertising claims under the UCL and CLRA were not "grounded in fraud" and therefore,

24  Rule 9 did not apply because plaintiff did not allege ***all*** of the elements of fraud, namely,

25  knowledge of falsity or intent to induce reliance.  *See also In re Mattel, Inc.,* 588 F. Supp. 2d

26

27    [11]    If this court finds plaintiff lacks standing to assert injunctive relief here, plaintiff intends to file a separate action in state court seeking such relief.  *See Deitz v. Comcast Corp.*, No. C 06-06352 WHA, 2006 U.S. Dist. LEXIS 94333 (N.D. Cal. Dec. 21, 2006), at *12

28  (plaintiff may split his claim and seek injunctive relief in state court).

1111, 1118 (C.D. Cal. 2008) (same); *Gruen v. Edfund & Van Ru Credit Corp.*, No. 09-00644, 2009 U.S. Dist. LEXIS 60396, at \*15 (N.D. Cal. July 15, 2009) (Rule 9(b) does not apply where "Plaintiff merely alleges representations that were likely to deceive and does not allege an overarching fraudulent scheme to defraud."). The *Johns* court declined to revisit its previous ruling on the Rule 9 issue in a subsequent motion to dismiss. *See Johns v. Bayer Corp.*, No. 09CV1935, 2010 U.S. Dist. LEXIS 62804, \*10, n.2 (S.D. Cal. June 24, 2010).

Plaintiff does not allege, because he does not have to, intent by defendant to deceive him or his fellow class members. Nor does plaintiff allege class wide reliance or damages in his UCL claim as these are not elements under the UCL. Moreover, the claims under the UCL's "unfair" prong are not grounded in fraud. Accordingly, Rule 9 does not apply.

### B.  Regardless, Plaintiff's Allegations Meet Rule 9(b)'s Particularity Requirement

Even if Rule 9(b) is applied, the particularity requirement must be read in harmony with Rule 8's requirement of a "short and plain" statement of the claim. *Sanderson v. HCA– The Healthcare Co.*, 447 F.3d 873, 876 (6th Cir. 2006). Rule 9(b) only requires that allegations regarding the circumstances constituting the fraud be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001); *Warshaw v. Xoma Corp.*, 74 F.3d 955, 960 (9th Cir. 1996) ("[A] pleading is sufficient under Rule 9(b) if it identifies the circumstances of the alleged fraud so that the defendant can prepare an adequate answer."); *Cooper v. Pickett*, 137 F.3d 616, 625 (9th Cir. 1997) (holding that plaintiff need only "set forth what is false or misleading about a statement, and why it is false").

Here, the Complaint without question gives fair notice of the alleged misconduct. P&G knows the exact representations at issue (the Complaint reprints and attaches the advertisements), and when and where they were made. ¶3; *see also* ¶12 ("Since the 2006 launch of the Fusion system, P&G[] has consistently advertised…."); ¶12 ("P&G has done this through package color coding, prominenty placing 'Power' on the front of the Fusion Power

BLOOD HURST & O'REARDON, LLP

14

1   blade cartridge packaging, and by the price differential."); ¶14 ("Those consumers that view
2   and compare the backsides of the Fusion manual and Fusion Power cartridge packages are
3   even further deceived [because] … P&G states that …."); ¶39 (the representations are
4   ongoing, defendant "continue[s] to engage in the above-described conduct"). The Complaint
5   also describes why these allegations are likely to deceive the reasonable consumer. ¶1 ("the
6   [Fusion Power and Fusion manual] cartridges are not meaningfully different, and P&G has no
7   proof that they are"); ¶3 ("there is no difference between the blade cartridges, other than the
8   price"); ¶¶16-17 (the utility of the PowerGlide coating is limited to first shaves "when shaving
9   a dry beard"). *See Chacanaca v. Quaker Oats Co.*, No. 10-0502, 2010 U.S. Dist. LEXIS
10  111981, at *39-*40 (N.D. Cal. Oct. 14, 2010) (finding Rule 9(b) was satisfied where
11  "plaintiffs have identified the particular statements they allege are misleading, the basis for
12  that contention, where those statements appear on the product packaging, and the relevant time
13  period in which the statements were used"). Moreover, P&G concedes knowing what message
14  is at issue: "Plaintiff refers to this combination as the 'deceptive message.'" Def's Mem. at 7.

15          In the face of the detailed Complaint, and its concession that it understands the
16  deceptive message at issue, P&G's argument about plaintiff's "strategic vagueness" is a bit of
17  a joke. To the extent that Rule 9 even applies, plaintiff has met it.

18  **VI.     Plaintiff States a Claim Under the CLRA**

19          P&G spills much ink arguing that because there are no actionable misrepresentations or
20  omissions, plaintiff does not allege a violation of the CLRA. *See* Def's Mem. at 5-15. To
21  reach its conclusion, P&G relies upon the series of nonsensical mischaracterizations.

22          The CLRA "prohibits unfair methods of competition and unfair or deceptive acts or
23  practices." *Williams*, 523 F.3d at 938; Civ. Code §1770. "[C]laims under the[] [UCL and
24  CLRA] are governed by the reasonable consumer test." *Williams*, 523 F.3d at 938.
25  Representations are actionable under the CLRA if they are "likely to deceive" a reasonable
26  consumer. *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1358-60
27  (2003). Under both the CLRA and UCL "[a] perfectly true statement couched in such a
28  manner that it is likely to mislead or deceive the consumer, such as by a failure to disclose

BLOOD HURST & O'REARDON, LLP

00027202                                    15                    No. 3:10-CV-02256-IEG(NLS)

BLOOD HURST & O'REARDON, LLP

1    other relevant information, is actionable." *Day*, 63 Cal. App. 4th at 332.  An action may be

2    brought under the CLRA by "[a]ny consumer who suffers any damage as a result of the use or

3    employment by any person of a method, act, or practice declared to be unlawful by Section

4    1770."  Civ. Code §1780(a).  That is, a consumer must be exposed to an unlawful practice, and

5    some kind of damage must result.  *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 641 (2009).

6    As noted throughout this opposition, plaintiff was exposed to and read P&G's false

7    advertising, purchased premium-priced Fusion Power blades in reliance on the false

8    advertising, and was thereby injured and lost money.  Thus, plaintiff properly alleges the

9    elements of a CLRA claim.

10          First, P&G's fine-print, vague and ambiguous statements on the back of the Fusion

11   Power and Fusion manual blade packages do ***nothing*** to cure the deceptive message at issue.

12   *See Williams*, 523 F.3d at 939; *Rubio*, 613 F.3d at 1204-05.  Nor do its counsel's clever

13   characterizations of the fine-print accurately portray the statements.   For example, ***nowhere***

14   on the Fusion Power cartridge does P&G state "products within the Fusion family work

15   together and that either a Fusion [manual] or Fusion Power blades can be used with a Fusion

16   Power handle."  Def's Mem. at 8; *see also id.* at 17 (the Fusion Power packaging "states that

17   consumers can use either cartridge with either handle").

18          Second, plaintiff does not challenge "disparate" advertising statements.  Def's Mem. at

19   7.  Rather, plaintiff alleges that the deceptive message is conveyed in a number of ways (name,

20   color, price, and PowerGlide) that build upon each other in collective furtherance of the

21   message.  ¶¶1, 3, 12-13.  Whether an advertisement, including a label, is false or misleading

22   under California's consumer protection laws is fact-intensive one where the entire

23   advertisement should be viewed as a whole, and not in isolation, as P&G does in its m otion.

24   *Williams*, 552 F.3d at 939 (refusing to dismiss statement as puffery where the packaging as a

25   whole gave context to the subject claim); *Lima v. Gateway, Inc.,* 710 F. Supp. 2d 1000, 1007

26   (C.D. Cal. 2010) (holding that statements that may be considered puffery on their own "cannot

27   be considered in isolation because they contribute to the deceptive context of the advertising as

28   a whole" and "The relevant question is whether the statements, taken as a whole, are likely to

1   deceive members of the public."); *Morgan*, 177 Cal. App. 4th at 1256-57 (considering the

2   effect of all of AT&T's representations to determine whether consumers were "'likely to be

3   deceived'").[12]  For example, in *Chacanaca*, the court rejected Quaker Oats' argument that the

4   word "wholesome," the product decal "smart choices made easy," and photographic depictions

5   of oats, nuts, and children in soccer uniforms were either true or constitute puffery, and thus

6   non-actionable, in a UCL and CLRA action about labeling granola bars to suggest they were

7   healthy when in fact they contained dangerous amount of trans fat.  2010 U.S. Dist. LEXIS

8   111981, at *36-*38.  The court analyzed the words, phrases, and pictures in context and stated

9   that "the Court cannot resolve at this juncture the issue of whether or not a reasonable

10  consumer might be duped."  *Id.* at *38.

11      Thus, the alleged message is not simply the name of the products.  Def's Mem. at 8.

12  Nor, as explained above, do the facts in the Crunchberries, FROOT LOOPS, and Berry Berry

13  Trix cases aid P&G.  Here, as in *Williams* (where naming the products "Fruit Juice Snacks

14  contributed to the deception), the "Power" moniker that P&G chose to apply to its orange and

15  more expensive blades contributes to the deceptive message.  Tellingly, P&G never suggests a

16  rational, let alone non-deceptive, reason why it chose the "Power" moniker for its more

17  expensive and orange Fusion Power blades.

18

19

20  [12]   Contrary to P&G's contention, because of the "basic legal principle" that a particular
    advertising statement must be considered within the context of the whole advertisement and
21  advertising campaign, even general statements such as Papa John's slogan "'Better
    Ingredients. Better Pizza'" are actionable statements of fact.  *Pizza Hut, Inc. v. Papa John's*
22  *Int'l, Inc.*, 227 F.3d 489, 501-02 (5th Cir. 2000); *see also Dyson, Inc. v. Oreck Corp.*, No. 07-
    9633, 2009 U.S. Dist. LEXIS 19097, at *20-*21 (E.D. La. Mar. 4, 2009) ("while the word
23  'bulky' may be puffery standing alone ... [i]n context the claim is that the Dyson, in contrast to
    the slimmer Oreck, is too large (*i.e.*, bulky) to clean under furniture of a certain height");
24  *Clorox Co. P.R. v. P&G*, 228 F.3d 24, 38-39 (1st Cir. 2000) (a campaign tag line "Whiter is
    not possible" must be looked at in context and is not puffing); *Castrol, Inc. v. Pennzoil Co.*,
25  987 F.2d 939, 945-46 (3d Cir. 1993) (despite not mentioning its competitors, Pennzoil's claim
    of "better engine protection" was not puffery because it involves "more than a mere
26  generality" and "left the consumer with the obvious conclusion that Pennzoil is superior to the
    other leading brands in protection against engine problems"); *Autodesk, Inc. v. Dassault*
27  *Systemes Solidworks Corp.*, 685 F. Supp. 2d 1001, 1017-18 (N.D. Cal. 2009) (while subjective
    and not measurable in isolation, when viewed in context the statement that defendant's
28  computer program can "'work easily'" with any version of software is not puffery).

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

1    Similarly misguided is P&G's overly simplistic argument that plaintiff alleges the color

2    orange on the Fusion Power blade package is a false statement of material fact. Def's Mem. at

3    10. As plaintiff alleges, the orange and blue coloring of the Fusion Power and Fusion manual

4    products aids and supplements the deceptive message.     ¶3.   P&G's argument that the

5    Complaint is like saying that Apple cannot charge more for identical iPods, one black and one

6    white, underscores P&G's Fusion Power deception. Unlike the iPod hypothetical, plaintiff and

7    reasonable consumers believed the Fusion Power and Fusion manual blades were different and

8    not interchangeable. P&G's inference that this case is also about alleged beliefs that orange

9    versus blue coloring affects the functionality of the blades is simply ridiculous. Def's Mem. at

10   10. Likewise, plaintiff does not allege that because Fusion Power blades are more expensive

11   than Fusion manual blades this constitutes a false statement of fact. *Id.* at 10-11. Like the

12   Power moniker and orange coloring on the Power blades, the fact that the Fusion Power blades

13   are more expensive than the blue manual blades aids and supplements the deceptive message.[13]

14   P&G also asserts that there are no actionable implicit representations or omissions.

15   Def's Mem. at 11-15. In so arguing, P&G rehashes its mischaracterizations of the allegations

16   stating, for example, "Plaintiff's subjective belief cannot form the basis for a claim because

17   there are no representations" that "he was obligated to use the Fusion Power cartridges with

18   his handle." *Id.* at 11-12. Notwithstanding the ruminations of P&G's lawyers about what

19   reasonable consumers can and cannot believe, the allegations are that P&G's representations

20   lead consumers to believe that "the more expensive Fusion Power razor handles should be

21   paired with the more expensive Fusion Power cartridges, and Fusion manual and Fusion

22   Power blades cartridges are different from each other in ways that are meaningful to the user."

23   ¶¶1, 13, 15.   Implicit representations, like those alleged in the Complaint are actionable

24   misrepresentations. *Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal.

25

---

26   [13]     P&G's case citations are to factually inapplicable situations: *Thrifty Oil Co. v. Linder*,
      91 Cal. App. 4th 1070, 1073 (2001) (the Thrifty stations had at least one four-foot by six-foot
      sign identifying the cash and credit card prices for gasoline) and *Cardinal Industries, Inc. v.*
27   *Pressman Toy Corp.*, No. 96-4590, 1996 U.S Dist. LEXIS 18714, at *24-25 (S.D.N.Y. Dec.
      16, 1996) (in a Clayton Act price-discrimination action the court noted that "Plaintiff has
28   nowhere alleged that defendant made a false or misleading statement.").

1   3d 197, 205 (1983). P&G states that *Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398

2   (E.D.N.Y. 2010) supports its argument that plaintiff cannot pursue an implicit message where

3   explicit statements are to the contrary. Def's Mem. at 12. *Waldman* merely holds that

4   "Plaintiff pleads nothing to suggest that she, or other class members, cared" about the alleged

5   misrepresentations. 714 F. Supp. 2d at 403. *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45

6   (2007), which holds that the implicit representation that Pentium 4 is better than Pentium III

7   was puffery because "plaintiffs' theory requires vague suggestions upon vague suggestion," is

8   also easily distinguished. Def's Mem. at 13. Contrary to the messaging at issue here, the only

9   statement at issue in *Barbara's Sales* was the name "Pentium 4." 227 Ill. 2d at 74. As

10  discussed above, the alleged deceptive message is governed by *Williams* and others that

11  conclude an advertisement must be viewed as a whole.

12          Lastly, P&G argues that because it had no "fiduciary or confidential relationship" with

13  plaintiff, P&G had no duty to disclose. P&G contends without a duty to disclose, there is no

14  actionable omission under the CLRA. Def's Mem. at 15. This is not what the CLRA requires.

15  Rather, plaintiff need only demonstrate P&G possessed material facts not known to plaintiff,

16  and concealed the facts, or made partial representations, but also suppressed some material

17  facts. *Daugherty v. American Honda Motor Corp., Inc.*, 114 Cal. App. 4th 824, 834-35

18  (2006). Materiality exists if the omitted information would cause a reasonable consumer to

19  behave differently if he or she were aware of the information. *Tobacco II*, 46 Cal. 4th at 327

20  ("A misrepresentation is judged to be 'material' if 'a reasonable man would attach importance

21  to its existence or nonexistence in determining his choice of action in the transaction in

22  question....'"); *see also Mass. Mut. Life Ins.*, 97 Cal. App. 4th at 1294 ("A misrepresentation is

23  material if it induced the plaintiff to alter his position to his detriment."). *Bardin v.*

24  *DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1274 (2006), cited by P&G, does not hold

25  otherwise. There, the court found that DaimlerChrysler was not liable for failure to disclose

26  information about the allegedly inferior exhaust manifolds because it did not make any

27  representations about the exhaust manifolds. *Id.*; *Baba v. Hewlett-Packard Co.*, No. C 09-

28

BLOOD HURST & O'REARDON, LLP

1  05946, 2010 U.S. Dist. LEXIS 59747, at *21 (N.D. Cal. June 16, 2010) (same); *Wilkins v.*

2  *Nat'l Broad. Co., Inc.*, 71 Cal. App. 4th 1066, 1082 (1999) (fraud claims).

3        By contrast, here, P&G represented on its packaging and advertisements that the

4  Fusion Power razor blades were required for the Fusion Power handle. ¶¶10, 12. P&G

5  however, failed to disclose the material fact that the cheaper Fusion manual blades also

6  worked with the Fusion Power handle. ¶¶12, 13, 15. That is, nowhere (not even fine-print

7  back-of-package disclaimers) on the Fusion Power blades or Fusion Power handles does P&G

8  disclose that the cheaper Fusion manual blades can be used with the Fusion Power handles. A

9  reasonable consumer would behave differently if armed with this knowledge, and thus, P&G

10  was required to disclose this fact.

11  **VII.  Plaintiff States a Claim for Violation of Each Prong of the UCL**

12        "[T]he primary purpose of the unfair competition law ... is to protect the public from

13  unscrupulous business practices." *Consumers Union of U.S., Inc. v. Alta-Dena Certified*

14  *Dairy,* 4 Cal. App. 4th 963, 975 (1992); *Tobacco II*, 46 Cal. 4th at 312. The UCL imposes

15  strict liability on anyone who violates its prohibitions and the "scope of the UCL is quite

16  broad." *McKell*, 142 Cal. App. 4th at 1471; *see also Cortez v. Purolator Air Filtration Prods.*

17  *Co.*, 23 Cal. 4th 163, 181 (2000) ("[P]laintiff need not show that a UCL defendant intended to

18  injure anyone through its unfair or unlawful conduct."). Because the statute is framed in the

19  disjunctive, a business practice need only meet one of the three criteria ("unlawful," "unfair"

20  or "fraudulent") to violate the UCL. *McKell*, 142 Cal. App. 4th at 1471.

21        **A.  Unlawful Business Practices**

22        The UCL's unlawful prong is essentially an incorporate-by-reference provision. "By

23  proscribing 'any unlawful' business practice, 'section 17200 "borrows" violations of other

24  laws and treats them as unlawful practices' that the unfair competition law makes

25  independently actionable." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.

26  4th 163, 180 (1999). "With respect to the unlawful prong, '[v]irtually any state, federal or

27  local law can serve as the predicate for an action' under section 17200." *People ex rel.*

28  *Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508, 515 (2002) (emphasis omitted).

BLOOD HURST & O'REARDON, LLP

00027202

20

No. 3:10-CV-02256-IEG(NLS)

BLOOD HURST & O'REARDON, LLP

1    First, P&G contends that plaintiff's predicate violations of California's fraud and deceit

2    statutes fail because the CLRA claim does not lie, and there are no actionable

3    misrepresentations for violations based upon Civil Code §§1572-73, 1709, and 1711. Def's

4    Mem. at 17. P&G is wrong for the reasons stated in §IV above. Accordingly, plaintiff's

5    predicate violations stand.

6    Second, P&G wrongly contends that "a violation of the 'common law'… cannot

7    support the 'unlawful' prong of the UCL." Def's Mem. at 17.[14] In *Korea Supply Co. v.*

8    *Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1159 (2003), the Supreme Court unequivocally

9    affirmed that common law violations are "unlawful" predicate acts for the UCL: "We

10   conclude, therefore, that an act is independently wrongful if it is unlawful, that is, if it is

11   proscribed by some constitutional, statutory, regulatory, ***common law***, or other determinable

12   legal standard." Similarly, courts of appeal have found that systematic breach of consumer

13   contracts violate the UCL. *Smith v. Wells Fargo Bank, N.A.*, 135 Cal. App. 4th 1463, 1483

14   (2005); *State Farm Fire & Cas. Co. v. Superior Court*, 45 Cal. App. 4th 1093, 1104 (1996).

15   *See also Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2007) (breach

16   of contract may form the predicate for a UCL claim if the breach is unlawful, unfair or

17   fraudulent). Here, P&G's systematic breach of its warranties is a predicate violation for

18   purposes of the UCL's unlawful prong.[15]

19   **B.    Fraudulent Business Practice**

20   To prove that a practice is "fraudulent" within the meaning of the UCL, one need not

21   prove the elements of the common law tort of fraud. *Tobacco II*, 46 Cal. 4th at 312. "Instead,

22   one need only show that 'members of the public are likely to be deceived.'" *Id.* A business

23

24   [14]    Its sole authority is an unpublished district court opinion, *Hartless v. Clorox Co.*, No.
     06cv2705, 2007 U.S. Dist. LEXIS 81686, at 11 (S.D. Cal. Nov. 2, 2007). *Hartless* cannot be

25   followed in the face of published California Supreme Court and Court of Appeal decisions
     holding that a violation of common law may be a predicate act for the UCL's unlawful prong.

26   *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236 (1940) (federal courts deciding a case
     involving state law must follow the interpretation given by that state's court); *Sarausad v.*

27   *Porter*, 503 F.3d 822, 824 (9th Cir. 2007).

     [15]    P&G does not address plaintiff's well-pled predicate violations under Bus. & Prof.
28   Code §§17200 and 17500. Both laws are proper predicate violations.

1    practice is likely to deceive where "it is probable that a significant portion of the general

2    consuming public or of targeted consumers, acting reasonably in the circumstances, could be

3    misled." *Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003). The

4    determination of whether a practice is likely to deceive is a "question of fact, requiring

5    consideration and weighing of the evidence from both sides before it can be resolved."

6    *McKell*, 142 Cal. App. 4th at 1472.

7         P&G makes two challenges to plaintiff's fraudulent prong claim. First, P&G repeats

8    its contention that there are no actionable misrepresentations, and on that false premise argues

9    no fraudulent prong claim can lie. Plaintiff properly alleges that members of the public are

10    likely to be misled by P&G's false and deceptive advertising that Power Fusion blades must be

11    used with Fusion Power handles, and that Fusion Power blades are superior to Fusion manual

12    blades. Like in *Williams*, this case is not the rare one where a court can determine that

13    consumers are not likely to be deceived by the misrepresentations and omissions. 552 F.3d at

14    939. Even if the fine-print, vague and ambiguous statement on the back of Fusion Power

15    blade packaging could be considered clarifying information, the Ninth Circuit has rejected this

16    disclaimer-type argument. *Id.*; *Rubio*, 613 F.3d at 1204-05.

17         P&G's second fraudulent prong argument, that the allegations do not satisfy Rule 9(b),

18    also confuses the Rule 8(a) standard applied to UCL's fraudulent prong, with common law

19    fraud's Rule 9(b) standard. In any event, as discussed above, the allegations satisfy Rule 9(b).

20         **C.**    **Unfair Business Practices**

21         Highlighting the absurdity of P&G's self-serving mischaracterizations, P&G argues the

22    Complaint does not state a claim under the UCL's unfair prong because "Plaintiff has not pled

23    the existence of a public policy to which Plaintiff's vague claims of disappointment and

24    confusion may be tethered. There is no constitutional, legislative, or regulatory provision

25    concerning the coloring or naming of razor blade cartridges that Defendant has violated."

26    Def's Mem. at 19-20 and n.9 ("Using a packaging design that allegedly does not meet

27    plaintiff's subjective expectations does not violate public policy."). P&G gets the facts and

28    law wrong, and its argument must be rejected.

BLOOD HURST & O'REARDON, LLP

1    "A business practice is unfair within the meaning of the UCL if it violates established

2    public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to

3    consumers which outweighs its benefits." *McKell*, 142 Cal. App. 4th at 1473. The unfair

4    prong is "'intentionally broad, thus allowing courts maximum discretion to prohibit new

5    schemes to defraud.'" *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1166 (2000). As the

6    California Supreme Court emphasized: "'In permitting the restraining of all "unfair" business

7    practices,'" the UCL "'undeniably establishes only a wide standard to guide courts of

8    equity .... [G]iven the creative nature of the scheming mind, the Legislature evidently

9    concluded that a less inclusive standard would not be adequate.'" *Cel-Tech*, 20 Cal. 4th at

10   181. P&G correctly notes that courts apply two different tests to determine whether conduct

11   violates the unfair prong. Def's Mem. at n.9; *see also McKell*, 142 Cal. App. 4th at 1473.

12   P&G argues an unfair claim does not lie because "[p]ut simply, the use of a particular

13   coloring scheme and product name does not itself violate any law, standard or norm" and "a

14   packaging design that allegedly does not meet plaintiff's subjective expectations does not

15   violate public policy." Def's Mem. at n.9. P&G's argument is the one that is too simply put.

16   As discussed herein and in the Complaint, P&G's advertising is false and deceptive and

17   violates specified laws. *See, e.g.*, ¶30. California has a strong public policy prohibiting false

18   advertising, and false advertising is never justified. *Vasquez*, 4 Cal. 3d at 808.

19   **VIII.   Plaintiff States a Claim for Breach of Express Warranty**

20   An express warranty is created when a seller makes an affirmation of fact or promise

21   about the goods, or provides a description of the goods, which is part of the basis of the

22   bargain. Cal. U. Com. Code §2313(1)(a) and (b); *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal.

23   App. 4th 1213, 1227 (2010). The statements or description creating the warranty may appear

24   in any variety of forms, including in advertisements or brochures. *Id.* at 1225-1233 (warranty

25   created by statements in product directions); *Fundin v. Chicago Pneumatic Tool Co.*, 152 Cal.

26   App. 3d 951, 957 (1984) (warranty can be created by statements in sales brochure, in labels or

27   advertising). "The 'whole purpose' of warranty law is 'to determine what it is that the seller

28   has in essence agreed to sell ....'" *Weinstat*, 180 Cal. 4th at 1228 (citing Cal. U. Com.

BLOOD HURST & O'REARDON, LLP

1 Code, §2313). The claim focuses on "*the seller's* behavior and obligation – his or her

2 affirmations, promises, and descriptions of the good – all of which help define what the seller

3 'in essence' agreed to sell." *Id.* (emphasis in original).

4      P&G demonstrates its misunderstanding of an express warranty cause of action by

5 repeatedly asserting that the claim must fail because plaintiff "has not proffered facts showing

6 that he relied on any such affirmations or promises." Def's Mem. at 23. Reliance is not an

7 element of a warranty claim. "[B]reach of express warranty arises in the context of contract

8 formation in which reliance plays no role." *Weinstat*, 180 Cal. App. 4th at 1230 (plaintiff did

9 not receive product warranties until *after* the product was purchased and delivered.

10 Nonetheless, "[t]he precise time when the words of description or affirmation are made ... is

11 not material. The sole question is whether the language ... [is] fairly to be regarded as part of

12 the contract."). Regardless, in this case, plaintiff read the affirmations and statements on the

13 product label and purchased the product in reliance thereon.

14      P&G's remaining arguments are equally misplaced. It contends that "Plaintiff does not

15 allege the terms of the warranty." Def's Mem. at 23. Of course he does. The label and

16 advertisements containing the warranties are reproduced in, and attached to, the Complaint.

17 On this very same issue the court in *Morey* wrote: "Contrary to NextFoods' assertion, the

18 complaint amply details NextFood's warranties regarding GoodBelly products …. The

19 complaint contains pictures of GoodBelly products that clearly state that GoodBelly 'Supports

20 Healthy Digestion [and] Natural Immunity' and that GoodBelly has 'Clinically Tested Live

21 Cultures.'" *Morey*, 2010 U.S. Dist. LEXIS 67990 at *6.

22      Finally, P&G repeats its argument that plaintiff was not damaged because the Fusion

23 Power blades worked and he otherwise received the benefit of his bargain. Def's Mem. at 23.

24 Plaintiff's allegations (which must be taken as true) are that Fusion Power blades and Fusion

25 manual blades are materially identical and interchangeable, and therefore plaintiff paid for a

26 product that was not as advertised. ¶¶1, 3, 13-18, 53-54.

27

28

BLOOD HURST & O'REARDON, LLP

00027202

24

No. 3:10-CV-02256-IEG(NLS)

**IX. Conclusion**

For the foregoing reasons, P&G's Motion should be denied in its entirety. If, however, the Court dismisses any portion of the Complaint, plaintiff requests leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (the policy in favor of permitting amendment is to be applied with "extreme liberality.").

Respectfully submitted,

Dated: March 3, 2011

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
LESLIE E. HURST (178432)
THOMAS J. O'REARDON II (247952)
PAULA M. ROACH (254142)


By:      s/Timothy G. Blood
              TIMOTHY G. BLOOD

600 B Street, Suite 1550
San Diego, CA 92101
Telephone: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
lhurst@bholaw.com
toreardon@bholaw.com
proach@bholaw.com

BONNETT, FAIRBOURN, FRIEDMAN
   & BALINT, P.C.
ANDREW S. FRIEDMAN
ELAINE A. RYAN
PATRICIA N. SYVERSON (CA 203111)
2901 N. Central Avenue, Suite 1000
Phoenix, AZ 85012-3311
Telephone: 602-274-1100
602/798-5825 (fax)
afriedman@bffb.com
eryan@bffb.com
psyverson@bffb.com

BONNETT, FAIRBOURN, FRIEDMAN
   & BALINT, P.C.
TODD D. CARPENTER (CA 234464)
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: 619/756-7095
602/798-5825 (fax)
tcarpenter@bffb.com

BLOOD HURST & O'REARDON, LLP

1          WHATLEY DRAKE & KALLAS
              PATRICK SHEEHAN

2          60 State Street, 7th Floor
              Boston, MA 02109

3          Telephone: 617/573/5118
              617/573-5090 (fax)

4          psheehan@wdklaw.com

5          CASEY GERRY SCHENK FRANCAVILLA
               BLATT & PENFIELD, LLP

6          DAVID S. CASEY, JR. (60768)
              GAYLE BLATT (122048)

7          110 Laurel Street
              San Diego, CA 92101

8          Telephone: 619/238-1811
              619/544-9232 (fax)

9          dcasey@cglaw.com
              gblatt@cglaw.com

10

11         Attorneys for Plaintiff

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BLOOD HURST & O'REARDON, LLP

1

CERTIFICATE OF SERVICE

2      I hereby certify that on March 3, 2011, I electronically filed the foregoing with the

3 Clerk of the Court using the CM/ECF system which will send notification of such filing to the

4 e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have

5 mailed the foregoing document or paper via the United States Postal Service to the non-

6 CM/ECF participants indicated on the Electronic Mail Notice List.

7      I certify under penalty of perjury under the laws of the United States of America that

8 the foregoing is true and correct.  Executed on March 3, 2011.

9

10
              s/Timothy G. Blood
              TIMOTHY G. BLOOD

11
              BLOOD HURST & O'REARDON, LLP
12            600 B Street, Suite 1550
              San Diego, CA  92101
13            Telephone: 619/338-1100
              619/338-1101 (fax)
14            tblood@bholaw.com

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BLOOD HURST & O'REARDON, LLP