# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN EDMUNSON, On Behalf of Himself, All Others Similarly Situated and the General Public,<br><br>Plaintiff,<br><br>vs.<br><br>THE PROCTER & GAMBLE COMPANY,<br><br>Defendant. | **CASE NO: 10-CV-2256-IEG (NLS)**<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>[Doc. No. 9] |

Presently before the Court is Defendant's motion to dismiss Plaintiff's complaint. [Doc. No. 9.] For the reasons stated below, the Court **GRANTS** Defendant's motion.

## BACKGROUND

This is a putative class action involving two models of razor blade cartridges manufactured and marketed by Gillette, a division of The Proctor & Gamble Company ("P&G" or "Defendant"). [Compl. ¶ 8; Def.'s Mot. to Dism. ("MTD"), at 2 n.1.] Both razor blade cartridges fall within Defendant's "Fusion" line of razor systems: "Fusion" ("Fusion manual") and "Fusion Power."

A razor system includes a handle and razor cartridges. Handles are sold with one or more razor cartridges, and separate cartridges are sold for refill purposes. The Fusion Power handle includes a

battery-operated mechanism that causes the handle and cartridge to vibrate during use.  The Fusion manual handle does not include such a mechanism and does not vibrate during use.

Both the Fusion manual and Fusion Power cartridges work with either Fusion handle.  The razor blades in the Fusion Power cartridges are coated with a patented, thin uniform telomer.  [See Compl. ¶¶ 14-16; Def.'s MTD, at 3 & Ex. 2 (Patent No. 5,985,459 (the "'459 Patent")).]  Fusion manual razor blades are also coated with telomer, but the coating on the Fusion manual razors is thicker and less uniform in thickness than the coating on the Fusion Power razors.  [Def.'s Reply, at 2; see Compl. ¶ 17.]  The '459 Patent claims the thin uniform telomer coating "significantly lower[s] initial cutting forces which correlates with a more comfortable first shave."  ['459 Patent, Abstract, at 1.]  Plaintiff alleges the thicker telomer coating on the Fusion manual razors is "pushed back during the first several shaving strokes," and there is thus "no material difference in comfort or performance between the Fusion manual and Fusion Power cartridges."  [Id. ¶ 17.]  Plaintiff further alleges that, "to the extent there may be an immaterial, but nonetheless measurable [difference between the two blades], it disappears after the first shave and only applies when shaving a dry beard."  [Compl. ¶ 16.]

The crux of Plaintiff's claims is that, since introducing the Fusion products in January 2006 and through the present, Defendant has engaged in deceptive advertising to suggest (1) the Fusion Power cartridges are materially different from, and superior to, the Fusion manual razors, and (2) the Fusion Power handles require use of Fusion Power cartridges.  Defendant's advertising induces consumers to purchase the Fusion Power cartridges, a four-pack of which cost approximately 20% more than a four-pack of the Fusion manual cartridges.  [Id. ¶ 2.]

Plaintiff points to several practices that allegedly deceive consumers as described above.  The expensive blades are named "Fusion Power," which corresponds with the battery-operated "Fusion Power" handles.  The two Fusion systems are color-coded to match the respective handles and cartridges: Fusion Power handles, cartridges, and packaging are orange, while portions of the Fusion manual handles, cartridges, and packaging are royal blue.  Additionally, the packaging for the Fusion Power cartridges explicitly states that "Fusion Power cartridges can be used with all Fusion [handles]," while the packaging for the Fusion manual cartridges states that "[a]ll Fusion cartridges can be used

with all Fusion [handles.]"[1]  The Fusion Power cartridges are prominently labeled with the "Power" moniker, which corresponds with the Fusion Power handles.  The labels for the Fusion Power cartridges state the Power blades have "a patented blade coating for incredible comfort," but the packages for the Fusion manual blades do not disclose that they are also coated with telomer.  Fusion Power cartridges sell for a retail price approximately 20% higher than the Fusion manual cartridges, which itself suggests a meaningful difference between the two.  When Defendant sells the Fusion Power handles, it gives the consumer a Fusion Power cartridge in the handle, but not a Fusion manual cartridge.  [Pl.'s Opp'n, at 7-8 & n.5; Compl. ¶¶ 2-3, 12-18.]

Named Plaintiff Ryan Edmunson alleges he was exposed to Defendant's deceptive advertising claims, relied on those claims when he purchased Fusion Power cartridges, and "suffered injury in fact and lost money as a result."  [Compl. ¶ 7.]  Plaintiff's complaint raises three causes of action: (1) Violations of California's Unfair Competition Law ("UCL"), (2) Violations of California's Consumers Legal Remedies Act ("CLRA"), and (3) Breach of Express Warranty.[2]

## LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  Navarro v. Block, 250 F.3d 729, 731 (9th Cir.2001).  The court must accept all factual allegations pleaded in the complaint as true, and must construe them and draw all reasonable inferences from them in favor of the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A

---

[1] Plaintiff does not raise this issue in his complaint.  Both parties included reproductions of Fusion product packaging including these statements in their briefs for this motion.  The parties dispute the effect of such statements on consumers.  [See Def.'s MTD, at 2; Pl.'s Opp'n, at 5-6 & n.5.]  Plaintiff also contends it was improper for Defendant to introduce these statements to the Court at this stage in the proceedings.  [Pl.'s Opp'n, at 5.]  In deciding this motion, to the extent the Court considers the statements at all, it views them in Plaintiff's favor.  See Cahill, 80 F.3d at 337-38.

[2] All of Plaintiff's Claims arise under California law.  Plaintiff alleges jurisdiction under 28 U.S.C. § 1332(d)(2).  He claims to be a resident of this district and that Defendant is incorporated in Ohio.  He alleges the amount in controversy for this putative class action exceeds $5 million.  [See Compl., ¶¶ 5-8.]

claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, --- U.S.---, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556).

However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citation omitted). A court need not accept "legal conclusions" as true. Iqbal, 129 S. Ct. at 1949. In spite of the deference the court is bound to pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

Regardless of the title given to a particular claim, allegations grounded in fraud are subject to Rule 9(b)'s pleading requirements. Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009). Where a plaintiff alleges a "unified course of fraudulent conduct" and relies entirely on that conduct as the basis for a claim, the claim is "grounded in fraud," and the pleading as a whole must satisfy Rule 9(b). Id. (citing Vess, 317 F.3d at 1103-04).

Rule 9(b) requires the circumstances constituting fraud to be stated with particularity; they must "state the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation." Misc. Serv. Workers, Drivers & Helpers v. Philco-Ford Corp., 661 F.2d 776, 782 (9th Cir. 1981) (citations omitted); Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged.") (internal quotation marks omitted). The plaintiff must also plead facts explaining why the statement was false when it was made. See In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1549 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in* Marksman Partners, L.P. v. Chantal Pharm. Corp., 927 F. Supp. 1297 (C.D. Cal. 1996).

Additionally, Plaintiff's complaint includes reproductions of the front of Fusion product packaging, and the parties provided reproductions of the back of Fusion product packaging with their briefs for the present motion. While the Court generally may not consider any material beyond the

4

1  pleadings on a Rule 12(b)(6) motion, it "may consider evidence on which the complaint 'necessarily
2  relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim;
3  and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." Marder v.
4  Lopez, 450 F.3d 445, 448 (9th Cir. 2006) (citing Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994)).
5  Plaintiff's complaint quotes directly from the backside of the Fusion Power cartridge packaging, and
6  the contents of both sides of Fusion product packaging are central to Plaintiff's claims. [See Compl.
7  ¶ 14 (explicitly referencing the backside of the Fusion Power packaging); see also id. ¶¶ 3-4, 12, 13, 51
8  (discussing the packaging of Fusion products).] Neither party has questioned the authenticity of the
9  representations of Fusion product packaging, though the representations provided by the parties depict
10 slightly different packaging. [Compare Def.'s MTD, Ex. 1 with Pl.'s Opp'n, at 5.] Accordingly, the
11 Court may consider the various representations of Fusion product packaging as "part of the complaint,
12 and thus may assume that [their] contents are true for the purposes of a motion to dismiss under Rule
13 12(b)(6)." Marder, 450 F.3d at 448 (quoting United States v. Ritchie, 342 F.3d 903, 908 (9th Cir.
14 2003)).

## DISCUSSION

### I. Plaintiff's Claims Under California's Unfair Competition Law and Consumer Legal Remedies Act

Plaintiff's first two causes of action arise under California's UCL and CLRA. Both claims are based on the allegation that Defendant employed various methods of advertising to convey two allegedly false or misleading messages to consumers: (1) the Fusion Power razors are different from and superior to the Fusion manual razors, and (2) the Fusion Power handles can only be used with the Fusion Power cartridges. Defendant disputes whether it made either representation and argues that Plaintiff has not offered facts showing that either representation is actionable.

Defendant further argues that Plaintiff fails to state a claim under either the UCL or the CLRA because he has not pleaded with particularity as required by Rule 9(b). Although Plaintiff disputes the applicability of Rule 9(b), he maintains the complaint satisfies its particularity requirements.

#### A. Whether Plaintiff Alleges Actionable Representations

The first alleged misrepresentation, that Fusion Power razors are different and superior to Fusion manual razors, is not actionable. An alleged misrepresentation must relate to an objectively

verifiable fact; subjective representations related to product superiority are mere puffery and are not actionable under the UCL or CLRA.  E.g., In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig., ---F. Supp. 2d---, 2010 WL 4892114, at *5 (S.D. Cal. Nov. 30, 2010) (dismissing UCL and CLRA claims because representations of a product's "high" or "superior" quality amounted to puffery); Tietsworth v. Sears, 720 F. Supp. 2d 1123, 1137 (N.D. Cal. 2010) (dismissing UCL and CLRA claims because the defendant's representations "that the [product in question was] 'designed, manufactured and tested for years of dependable operations' . . . are mere puffery, . . . and they as a matter of law could not deceive a reasonable consumer"); Oestreicher v. Alienware Corp., 544 F.Supp.2d 964, 973 (N.D. Cal. 2008), aff'd 322 Fed. Appx. 489 (9th Cir. 2009); Anunziato v. eMachines, Inc., 402 F. Supp. 2d 1133, 1139-41 (C.D. Cal. 2005) (representations that a notebook computer was of "high quality," was "reliable," offered "high performance," and employed the "latest technology" amounted to non-actionable puffery, while representations that the computers included "brand-name components" and were subject to the "most stringent quality control test" were actionable because they were specific factual allegations which could be proved or disproved through discovery); see also Shroyer v. New Cingular Wireless Servs., 622 F.3d 1035, 1043 (9th Cir. 2010) (affirming the dismissal of fraud claims because the alleged misrepresentation about the superiority of services provided amounted to mere puffery); Barbara's Sales, Inc. v. Intel Corp., 227 Ill. 2d 45, 74 (2007) (finding alleged representations that Intel's Pentium 4 processor was better than its previous, Pentium III processor to be non-actionable puffery).

      Here, Plaintiff states that the telomer coating on the Fusion Power razors differs from the coating on the Fusion manual razors.  [See Compl. ¶¶ 14-17.]  Plaintiff alleges, however, the difference is immaterial because any additional benefit to consumers from the Fusion Power razors is limited to the initial shave, and even then only affects dry shaving.  [See id.]  But Plaintiff points to no authority supporting his contention that, for a manufacturer to advertise that two of its products differ, the products must differ by some specified degree.  Whether the difference in the quality and comfort of the shave provided by the Fusion Power versus the Fusion manual razors is "material" depends on individual consumers' subjective preferences.  Cf. Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 329-30 (2011) (discussing standing requirements under the UCL and noting that regardless of whether a court might find them functionally equivalent, courts should not doubt consumers' subjective

preferences).³ The related allegation that Defendant falsely represented that Fusion Power razors are "superior" to Fusion manual razors is similarly subjective.

The complaint suggests no way to objectively measure whether Fusion Power razors are different from or superior to the Fusion manual blades. Accordingly, to the extent Plaintiff's UCL and CLRA claims stem from these alleged representations, they are **DISMISSED WITH LEAVE TO AMEND**.

By contrast, the second alleged misrepresentation, regarding the compatibility of the Fusion Power and manual cartridges with the Fusion Power and manual handles, is potentially actionable. Defendant admits that Fusion Power handles are compatible with both Fusion Power and Fusion manual cartridges. [Def.'s MTD, at 2 ("It is undisputed that both replacement cartridges work with either handle.") (emphasis in original).] The complaint highlights aspects of the packaging, branding, and pricing of the various Fusion products that, taken together, might be likely to deceive reasonable consumers. See Williams v. Gerber Prods. Co., 552 F.3d 934, 939-40 & n.3 (9th Cir. 2008) (reversing dismissal of UCL and CLRA claims where the plaintiff "could plausibly prove that a reasonable consumer would be deceived" by "the context of the packaging as a whole").

Thus, the alleged misrepresentation that Fusion Power handles are incompatible with Fusion manual cartridges may support UCL and CLRA claims. As discussed below, however, Plaintiff's claims fail because he has not pleaded them with sufficient particularity.

---

³ In Kwikset, the defendant advertised that its product was "Made in the U.S.A.," although the product contained foreign-made parts or involved foreign manufacture. 51 Cal. 4th at 328-29. The California Supreme Court held that customers who purchased the defendant's product in reliance on the representation that they were made in the U.S.A. suffered economic loss, and therefore had standing to sue under the UCL, even though they had received a functional product. The Court noted that, though "a court might objectively view the products as functionally equivalent," it was not the court's place to "doubt the consumer." Id. at 329. The Kwikset Court provided examples that help to illustrate this point:

> A counterfeit Rolex might be proven to tell the time as accurately as a genuine Rolex and in other ways be functionally equivalent . . . Two wines might to almost any palate taste indistinguishable—but to serious oenophiles, the difference between one year and the next, between grapes from one valley and another nearby, might be sufficient to carry with it real economic differences in how much they would pay. Nonkosher meat might taste and in every respect be nutritionally identical to kosher meat, but to an observant Jew who keeps kosher, the former would be worthless.

Id. at 329-30. While Kwikset examined such subtle, subjective differences in the context of establishing economic harm where consumers had been mislead, the point is equally persuasive here.

7

**B. Whether the Complaint Satisfies Rule 9(b)**

The parties dispute whether Plaintiff's UCL and CLRA claims are subject to the heightened pleading standards under Rule 9(b). Fraud is not a necessary element of UCL or CLRA claims; however, "claims under CLRA and the UCL are subject to Rule 9 if they are 'grounded in fraud' and . . . allegations of false representation and nondisclosure are grounded in fraud." Lima v. Gateway, Inc., 710 F. Supp. 2d 1000, 1006-07 (C.D. Cal. 2010) (quoting Kearns, 567 F.3d at 1126-27). In this case, allegations of false representation and nondisclosure underlie both claims: Plaintiff alleges Defendant engaged in deceptive advertising and withheld information to induce consumers to purchase the more expensive Fusion Power cartridges instead of the Fusion manual cartridges. [See Compl. ¶¶ 27-48.] Thus, Rule 9(b) applies to Plaintiff's UCL and CLRA claims.

Plaintiff fails to plead with sufficient particularity to satisfy Rule 9(b). Claims grounded in fraud must state the factual circumstances with particularity; such averments must include "the who, what, when, where, and how of the misconduct charged." Vess, 317 at 1103-04, 1106. The complaint contains general allegations about Defendant's products and advertising scheme, but almost no allegations specific to Plaintiff. The complaint alleges only that Plaintiff saw Defendant's advertising claims at some point during the class period (which spans more than five years) and purchased Fusion Power cartridges in reliance on those claims. [See Compl. ¶¶ 7, 29.] Plaintiff does not allege when during the class period, where, how many, or how many times he purchased Fusion Power cartridges or was exposed to the alleged misrepresentations. See, e.g., Yumul v. Smart Balance Inc., 733 F. Supp. 2d 1117, 1122-24 (C.D. Cal. 2010) (dismissing plaintiff's claims for failing to allege specific information about her purchases of the product in question). Plaintiff does not allege that he purchased any Fusion handle at all, let alone whether he purchased Fusion Power or Fusion manual handles and whether those handles he purchased came with Fusion Power or Fusion manual cartridges. While the complaint includes a partial depiction of the packaging for Fusion Power and Fusion manual products, it does not allege that the packaging depicted is the packaging Plaintiff saw or relied on in purchasing Fusion Power cartridges.[4] See, e.g., id. at 1124 & n.8.

---

[4] Notably, Defendant also includes depictions of Fusion products' packaging with its motion to dismiss, but the packaging depicted in Defendant's motion differs somewhat from that depicted in Plaintiff's complaint. [Compare Def.'s MTD, Ex. 1 with Compl., ¶ 12.]

Accordingly, Plaintiff's CLRA and UCL claims are **DISMISSED WITH LEAVE TO AMEND**.

## II.     Plaintiff's Express Warranty Claim

To prevail on a breach of express warranty claim under California law, a plaintiff must prove: (1) the seller made an affirmation of fact or a promise, or otherwise described the goods; (2) the statement formed part of the basis of the bargain; (3) the express warranty was breached; (4) the plaintiff was harmed; and (5) the breach of warranty was a substantial factor causing the plaintiff's harm. Morey v. NextFoods, Inc., No. 10 CV 761 JM (NLS), 2010 WL 2473314, at *2 (S.D. Cal. June 7, 2010) (citing Williams v. Beechnut Nutrition Corp., 185 Cal. App. 3d 135, 142 (1986)); see Weinstat v. Dentsply Int'l, Inc., 180 Cal. App. 4th 1213, 1227 (2010) (citing Cal. Com. Code § 2313).

A plaintiff must allege the "exact terms of the warranty." Williams, 185 Cal. App. 3d at 142; Stearns v. Select Comfort Retail Corp., ---F. Supp. 2d---, 2010 WL 2898284, at *10 (N.D. Cal. July 21, 2010). To constitute an express warranty, statements must describe specific characteristics of a product; "vague or highly subjective product superiority claims often amount to non-actionable puffery." Brothers v. Hewlett-Packard Co., 2007 WL 485979, at *6 (N.D. Cal. Feb. 12, 2007) (quoting Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1145 (9th Cir. 1997)) (internal alterations omitted).

Plaintiff's express warranty claim fails because he has not demonstrated the existence of a relevant express warranty, let alone provided its exact terms. Plaintiff argues he has satisfied this requirement by including reproductions of packaging for Fusion manual and Fusion Power products. Plaintiff correctly notes that product advertisements, brochures, or packaging can create an express warranty. Fundin v. Chicago Pneumatic Tool Co., 152 Cal. App. 3d 951, 957 (1984); Morey, 2010 WL 2473314, at *2; see also Weinstat, 180 Cal. App. 4th at 1225-33 (warranty created in product manual). But, unlike the packaging in the cases on which Plaintiff relies, the Fusion product packaging provides no statement or product description that can be construed as an express warranty relevant to Plaintiff's allegations.

For instance, in Morey v. NextFoods, Inc., the defendant manufactured and sold products called "GoodBelly Probiotic Fruit Drinks." 2010 WL 2473314, at *2. The plaintiff's complaint included reproductions of GoodBelly advertisements and packaging, which clearly stated that GoodBelly

9

1  products "'Support Healthy Digestion [and] Natural Immunity' and that GoodBelly has 'Clinically
2  Tested Live Cultures.'"  Id. (quoting the complaint).  Plaintiff alleged the products were never
3  clinically tested and there was no basis for the claims related to digestion and immunity.  The court
4  held the assertions on the packaging were sufficient to state a claim for breach of warranty.  Id.

5       Here, by contrast, the reproductions provided in Plaintiff's complaint show only the front of
6  various Fusion packaging.  The packaging states only the respective branding—"Fusion [manual]" and
7  "Fusion Power"; that the products are, or were, "new"; that both versions of Fusion cartridges have a
8  "5 Blade Shaving Surface + 1 Precision Trimmer" and last "up to 6 months"; and the number of razors
9  included in the package.  [See Compl. ¶¶ 3-4, 12-13.]  Whether or not any such statements can be
10  construed as express warranties, they are unrelated to the harm Plaintiff claims to have suffered.

11       Nor does anything on the backside of the packaging establishes a relevant express warranty.
12  The Fusion manual packaging states the five-blade surface technology provides less irritation than
13  another razor produced by Defendant (the "Mach 3") and notes that "[a]ll Fusion cartridges can be
14  used with all Fusion razors."  The Fusion Power packaging includes the same statement comparing the
15  five-blade cartridge with another razor.  It also states "Fusion Power cartridges can be used with all
16  Fusion razors," and "[f]or best results, power up with the Fusion Power razor."

17       As discussed above with regard to Plaintiff's fraud-based claims, statements related to
18  obtaining "best results" or whether Fusion products provide a better and more comfortable shave than
19  other razors are non-actionable puffery and do not establish express warranties.  See Johnson v.
20  Mitsubishi Digital Elec. Am., Inc., 578 F. Supp. 2d 1299, 1238-39 (C.D. Cal. 2008) (a television
21  manufacturer's "promise to deliver unsurpassed picture quality" is mere puffery and not an actionable
22  warranty); Consumer Advocates v. Echostar Satellite Corp., 113 Cal. App. 4th 1351 (2003) (satellite
23  broadcaster's assertions of "crystal clear digital" video quality were puffery and not actionable as
warranties).

24       Of the representations on the back side of the Fusion packaging, only those describing the
25  interchangeability of Fusion products relate to specific characteristics that may be construed as express
26  warranties.  Plaintiff, however, does not allege Defendant breached any such warranty.

27       Because Plaintiff has failed to plead the existence of an express warranty, this claim fails.
28  Thus, Plaintiff's express warranty claim is **DISMISSED WITH LEAVE TO AMEND**.

### III. Plaintiff's Standing to Pursue Injunctive Relief

Because the Court dismisses Plaintiff's substantive claims, it need not address at this time the parties' dispute over whether Plaintiff has standing to seek injunctive relief.

### CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's motion to dismiss. The Court grants Plaintiff leave to file an amended complaint within twenty (20) calendar days from the date of this order. Should Plaintiff fail to amend the complaint within the time permitted or fail to address the deficiencies discussed in this order, Plaintiff's remaining claims will be dismissed **WITH PREJUDICE.**

**IT IS SO ORDERED.**

**DATED:** 5/17/11

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**